John Bauer, Attorney
16103 W. Augusta
Litchfield Park, Arizona  85340
State Bar No. 91471
(623) 322-3859

Debra C. Young
Attorney at Law
610 Anacapa Street
Santa Barbara, CA    93101
State Bar No. 117263
(805) 403-2213

Attorneys for Debtors, Danilo and Lydia Trinidad



FILED

MAY - 6 2010

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY                    Deputy Clerk

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| In re | **Bk. No.** 09-bk-27152 GM |
| DANILO TRINIDAD and LYDIA TRINDAD, | In a Case Under Chapter 11 of the Bankruptcy Code (11 U.S.C. § 1101 et seq.) |
| Debtors | **FIRST AMENDED DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED CHAPTER 11 PLAN.** |

**Disclosure Statement Hearing**

Date:   May 11, 2010
Time:   10:00 a.m.
Ctrm:   Suite 303
        21041 Burbank Blvd.
        Woodland Hills, CA 91367

**Plan Confirmation Hearing**

Date:   _____
Time:
Ctrm:   Suite 303
        21041 Burbank Blvd.
        Woodland Hills, CA 91367

## TABLE OF CONTENTS

I.   **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . 1
  A.   Purpose of This Document . . . . . . . . . . . . . . . 1
  B.   Deadlines for Voting and Objecting; Date of Plan
       Confirmation Hearing . . . . . . . . . . . . . . . . . 2
       1.   Time and Place of the Confirmation
            Hearing . . . . . . . . . . . . . . . . . . . . 3
       2.   Deadline for Voting For or Against the
            Plan . . . . . . . . . . . . . . . . . . . . . 3
       3.   Deadline for Objecting to the Confirmation
            of the Plan . . . . . . . . . . . . . . . . . 3
       4.   Identity of Person to Contact for More
            Information Regarding the Plan . . . . . . . 3
  C.   Disclaimer . . . . . . . . . . . . . . . . . . . . . . 3

II.  **BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . 4
  A.   Description and History of the Debtor's
       Business . . . . . . . . . . . . . . . . . . . . . . . 4
  B.   Principals/Affiliates of Debtor's Business . . . . 4
  C.   Management of the Debtor Before and After the
       Bankruptcy . . . . . . . . . . . . . . . . . . . . . . 4
  D.   Events Leading to Chapter 11 Filing . . . . . . . . 4
  E.   Significant Events . . . . . . . . . . . . . . . . . 4
       1.   Bankruptcy Proceedings . . . . . . . . . . . 4
       2.   Other Legal Proceedings . . . . . . . . . . 4
       3.   Actual and Projected Recovery of
            Preferential or Fraudulent Transfers . . . . 4
       4.   Procedures Implemented to Resolve Financial
            Problems . . . . . . . . . . . . . . . . . . 5
       5.   Current and Historical Financial
            Conditions . . . . . . . . . . . . . . . . . 5

III. **SUMMARY OF THE PLAN OF REORGANIZATION** . . . . . . . . . 5
  A.   What Creditors and Interest Holders Will Receive
       Under the Proposed Plan . . . . . . . . . . . . . . 5
  B.   Unclassified Claims . . . . . . . . . . . . . . . . 5
       1.   Administrative Expenses . . . . . . . . . . . 6
       2.   Priority Tax Claims . . . . . . . . . . . . . 7
  C.   Classified Claims and Interests . . . . . . . . . . 7
       1.   Classes of Secured Claims . . . . . . . . . . 7
       2.   Classes of Priority Unsecured Claims . . . . 8
       3.   Classes of General Unsecured Claims . . . . . 9
       4.   Class(es) of Interest Holders . . . . . . . . 10
  D.   Means of Effectuating the Plan . . . . . . . . . . 10
       1.   Funding for the Plan . . . . . . . . . . . . 10
       2.   Post-Confirmation Management . . . . . . . . 10
       3.   Disbursing Agent . . . . . . . . . . . . . . 10
  E.   Risk Factors . . . . . . . . . . . . . . . . . . . . 10
  F.   Other Provisions of the Plan . . . . . . . . . . . 11
       1.   Executory Contracts and Unexpired Leases . . 11

        a.   Assumptions . . . . . . . . . . . . . . . 11
        b.   Rejections . . . . . . . . . . . . . . . 11
    2.   Changes in Rates Subject to Regulatory
        Approval . . . . . . . . . . . . . . . . . 12
    3.   Retention of Jurisdiction . . . . . . . . . 12
  G.  Tax Consequences of Plan . . . . . . . . . . . 12

**IV.  CONFIRMATION REQUIREMENTS AND PROCEDURES** . . . . . . . 13
  A.  Who May Vote or Object . . . . . . . . . . . . 13
    1.   Who May Object to Confirmation of the
        Plan . . . . . . . . . . . . . . . . . . . 13
    2.   Who May Vote to Accept/Reject the Plan . . . 13
        a.   What is an Allowed Claim/Interest . . . 13
        b.   What Is an Impaired Claim/Interest . . . 14
    3.   Who is <u>Not</u> Entitled to Vote . . . . . . . . 15
    4.   Who Can Vote in More Than One Class . . . . . 15
    5.   Votes Necessary to Confirm the Plan . . . . . 16
    6.   Votes Necessary for a Class to Accept the
        Plan . . . . . . . . . . . . . . . . . . . 16
    7.   Treatment of Nonaccepting Classes . . . . . . 16
    8.   Request for Confirmation Despite Nonacceptance
        by Impaired Class(es) . . . . . . . . . . . 17
  B.  Liquidation Analysis . . . . . . . . . . . . . 17
  C.  Feasibility . . . . . . . . . . . . . . . . . 20

**V.  EFFECTS OF CONFIRMATION OF PLAN** . . . . . . . . . . . 22
  A.  Discharge . . . . . . . . . . . . . . . . . . 22
  B.  Revesting of Property in the Debtor . . . . . . 22
  C.  Modification of Plan . . . . . . . . . . . . . 22
  D.  Post-Confirmation Status Report . . . . . . . . 23
  E.  Quarterly Fees . . . . . . . . . . . . . . . . 23
  F.  Post-Confirmation Conversion/Dismissal . . . . . 23
  G.  Final Decree . . . . . . . . . . . . . . . . . 24

**VI. SUPPORTING DECLARATIONS** . . . . . . . . . . . . . . 25

  Attachment 1
  Attachment 2
  EXHIBIT A - LIST OF ALL ASSETS . . . . . . . . . . . 26
  EXHIBIT B - FINANCIAL STATEMENT . . . . . . . . . . . 27
  EXHIBIT C - UNEXPIRED LEASES TO BE ASSUMED . . . . . . 28
  EXHIBIT D - EXECUTORY CONTRACTS TO BE ASSUMED . . . . . 29
  EXHIBIT E - LIQUIDATION ANALYSIS . . . . . . . . . . 30
  EXHIBIT F - LIST OF ADMINISTRATIVE EXPENSE CLAIMS . . . 31
  EXHIBIT G - LIST OF PRIORITY UNSECURED CLAIMS . . . . . 32
  EXHIBIT H - LIST OF GENERAL UNSECURED CLAIMS . . . . . 38
  EXHIBIT I - LIST OF EQUITY INTERESTS. . . . . . . . .

I.

**INTRODUCTION**

Danilo and Lydia Trinidad are the Debtors in Possession in a Chapter 11 bankruptcy case.  On December 18, 2009, they commenced a bankruptcy case by filing a voluntary Chapter 11 petition under the  United States Bankruptcy Code ("Code"), 11 U.S.C. § 101 et seq..  Chapter 11 allows the Debtors, and under some circumstances, creditors and other parties in interest, to propose a plan of reorganization ("Plan"). The Plan may provide for the Debtors to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. Danilo and Lydia Trinidad are the parties proposing the First Amended Plan sent to you in the same envelope as this document.  THE DOCUMENT YOU ARE READING IS THE FIRST AMENDED DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.

This is a reorganizing plan.  In other words, the Proponents seek to accomplish payments under the First Amended Plan by treating some of their mortgage debts as unsecured debts, then by paying the remaining secured portion of the mortgage debts over time from rental and earned income.  The Effective Date of the proposed First Amended Plan is July 1, 2010.

**A.    Purpose of This Document**

This First Amended Disclosure Statement summarizes what is in the First Amended Plan, and tells you certain information about the First Amended Plan and the process the Court follows

-4-

in deciding whether or not to confirm the First Amended Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO
KNOW ABOUT:**

      **(1)  WHO CAN VOTE OR OBJECT,**

      **(2)  WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your
claim will receive if the Plan is confirmed), AND HOW
THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD
RECEIVE IN LIQUIDATION,**

      **(3)  THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS
DURING THE BANKRUPTCY,**

      **(4)  WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER
OR NOT TO CONFIRM THE FIRST AMENDED PLAN,**

      **(5)  WHAT IS THE EFFECT OF CONFIRMATION, AND**

      **(6)  WHETHER THIS FIRST AMENDED PLAN IS FEASIBLE.**

This First Amended Disclosure Statement cannot tell you
everything about your rights.  You should consider consulting
your own lawyer to obtain more specific advice on how this First
Amended Plan will affect you and what is the best course of
action for you.

Be sure to read the First Amended Plan as well as the First
Amended Disclosure Statement.  If there are any inconsistencies
between the First Amended Plan and the First Amended Disclosure
Statement, the First Amended Plan provisions will govern.

The Code requires this First Amended Disclosure Statement
to contain "adequate information" concerning the First Amended
Plan.  The Bankruptcy Court("Court") will decide on May 11, 2010

whether to approve this document as an adequate First Amended

Disclosure Statement, containing enough information to enable

parties affected by the First Amended Plan to make an informed

judgment about the Plan. Any party can now solicit votes for or

against the First Amended Plan.

**B.    Deadlines for Voting and Objecting; Date of First Amended
Plan Confirmation Hearing.**

THE COURT HAS NOT YET CONFIRMED THE FIRST AMENDED PLAN

DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE

TERMS OF THE FIRST AMENDED PLAN ARE NOT YET BINDING ON ANYONE.

HOWEVER, IF THE COURT LATER CONFIRMS THE FIRST AMENDED  PLAN,

THEN THE PLAN WILL BE BINDING ON THE DEBTORS AND ON ALL

CREDITORS AND INTEREST HOLDERS IN THIS CASE.

### 1.    Time and Place of the Confirmation Hearing

The hearing where the Court will determine whether or not

to  confirm the First Amended Plan will take place on __tbd____,

at ___{A.M./P.M.}, in Courtroom 303, {U.S. Bankruptcy Court,

Central District of California, 21041 Burbank Blvd., Suite 303,

Woodland Hills, CA    91367.

### 2.    Deadline For Voting On the First Amended Plan

If you are entitled to vote, it is in your best interest to

timely vote on the enclosed ballot and return the ballot in the

enclosed envelope to Debra C. Young, Attorney, 610 Anacapa St.,

Santa Barbara, CA    93101.

Your ballot must be received by _____**date (court will provide)**_____or it

will not be counted.

###   3.    Deadline For Objecting to the Confirmation of the
First Amended Plan

Objections to the confirmation of the First Amended Plan

must be filed with the Court and served upon Debra C. Young,

Attorney, 610 Anacapa Street, Santa Barbara, CA  93101 by

(court will provide date

_____ .

###   4.    Identity of Person to Contact for More Information
Regarding the Plan

Any interested party desiring further information about the

First Amended Plan should contact John Bauer, Attorney, 16103

Augusta Ave., Litchfield Park, AZ  85340, (623) 910-6291, or

Debra C. Young, Attorney, 610 Anacapa Street, Santa Barbara, CA

93101,(805) 403-2213.

### C.    Disclaimer

The financial data relied upon in formulating the First

Amended Plan is based on:

a) Debtors' Schedule I, Schedule J, attached hereto as

Attachment "1".

b) Changes in expenses since the filing of the debtors'

Schedule which are enumerated herein,

c) The Statements of  Income for Vose Street for 2007

through 2009, attached as Exhibit"B".

d) The Statements of Income for Hart Street for 2007

through 2009, attached as Exhibit"B".

e) The Statements of Income-Projection for Vose Street

through December 31, 2010, the Statements of Income-Projection

-7-

for Hart St., and the statement of income Salaries and Wages

are attached as Exhibit"B".

The accounting information contained in Exhibit "B" is
provided by Lydia Trinidad. The Plan Proponents represent that
everything stated in the First Amended Disclosure Statement is
true to the Proponents' best knowledge.  The Court has not yet
determined whether or not the Plan is confirmable and makes no
recommendation as to whether or not you should support or oppose
the First Amended Plan.

## II.

### BACKGROUND

### A.   Description and History of the Debtors' Business

Danilo Trinidad, an individual debtor, was a contractor;
who did improvement work to the subject homes.  Now, due to
economic difficulties, he does repair work part time and
maintains their properties. Lydia Trinidad works full time for
an architect as an Autocad Drafter.  The Debtors own 100% of two
rental properties described as:
1) 15954 Vose St., Van Nuys, CA  91406, and 2) 15811 Hart St.,
Van Nuys, CA 91406.

### B.   Principals/Affiliates of Debtors' Business

There are no principals/affiliates of debtors' business.

### C. Management of the Debtor Before and After the Bankruptcy

The debtors have been the sole managers of their two rental
properties before, during and after the bankruptcy.

-8-

**D.    Events Leading to Chapter 11 Filing**

Here is a brief summary of the circumstances that led to
the filing of this Chapter 11: At one time, the 15954 Vose St.
property had a value of about $850,000, and the 15811 Hart St.
property had a value of about $620,000, for a combined value of
$1,470,000.00.  The debtors relied on those values for their
financial solvency.  With the 2008 recession, the value of these
two properties declined to a combined value of $780,000.00.
Also in 2008, the debtors experienced a decline in the amount of
rents they could charge.  As a result, the debtors could not
make their mortgage payments.  On December 18, 2009, they filed
this Chapter 11 petition in order to stop a foreclosure, and to
reorganize.

**E.    Significant Events During the Bankruptcy**

**1.    Bankruptcy Proceedings**

The following is a chronological list of significant events
which have occurred during this case:

a)   On 2/2/10, Debtors filed their Application to
Employ Appraiser Bill Martin.

b)   On 2/6/10, Wells Fargo, et. al., filed their
Notice of Security Interest in Rents and Profits.

c)   On 2/22/10, Debtors filed their Application to
Employ Attorneys John Bauer and Debra C. Young, which the court
subsequently approved.

d)   On 3/4/10, with respect to 15954 Vose St., Debtors
filed their Motion for Authority to Use Cash Collateral and

Proposal to Pay Adequate Protection. This motion was heard by
the court on April 6, 2010 at 10:00 a.m.  Judge Mund ordered the
debtors to pay Wells Fargo Bank adequate protection payments of
$4,000 per month from 12/18/10 to May 31, 2010.  Debtors have
paid adequate protection to Wells Fargo through May 31, 2009 by
paying the bank the total amount of $21,677.

     e)   The cash collateral aspect of the Motion for
Authority to Use Cash Collateral was continued to April 20, 2010
to allow debtors to file their Supplement to the Motion and
provide proof of the expenses associated with the maintainence
of 15954 Vose.  John Bauer filed a Supplement for the Debtors
and made a telephone appearance. Judge Mund authorized the use
of $1,479 per month in cash collateral for the upkeep of 15954
Vose St.

     f)   On 3/15/10, Wells Fargo Bank filed its Motion for
Relief From Stay, with hearing set for April 6, 2010. Debtors
filed their Opposition to Wells Fargo's Motion for Relief From
Stay.  The court considered the motion and the opposition and
continued the Motion For Relief to May 11, 2010.

     g)   On April 27, 2010, Wells Fargo Bank filed its Objection
to Disclosure Statement, then On April 29, 2010, Wells Fargo
filed its Amended Objection to Original Disclosure Statement. By
May 5, 2010, debtors will have filed their Response to Wells
Fargo's Objection to Disclosure Statement. By May 5, 2010,
debtors will have filed and served this First Amended Disclosure
Statement and their First Amended Plan.

-10-

**2.   Other Legal Proceeding**

The debtors aren't involved in any nonbankruptcy action.

**3.   Actual and Projected Recovery of Preferential or Fraudulent Transfers**

There is no projected recovery for preferential or fraudulent Transfers.

**4.   Procedures Implemented to Resolve Financial Problems**

To attempt to fix the problems that led to the bankruptcy filing, and to effectively reorganize their estate, Debtors have engaged in the following actions: 1) moved from their rental to their property at Hart Street to save themselves $750 per month in rental expense; 2) they have reduced their monthly expenses for food, clothing, recreation and transportation expenses in the amount of $585; 3) they have rented two vacant rooms in their Vose Street home – one for $500 per month and the other for $515 per month; and 4) they have changed the gardening service from weekly to two times pre month for a savings of $65 per month.  These changes will enable them to pay the greatest amount possible to their Class #3 unsecured creditors.

**5.   Current and Historical Financial Conditions**

The identity and fair market value of the estate's assets are listed in the debtors' Schedules A, B and C, which are attached hereto as a group as Attachment "2".  The fair market value of 15954 Vose St. is set forth in the appraisal that is part of Exhibit "B". The fair market value of 15811 Hart St. is set forth in the appraisal that is part of Exhibit "B".

-11-

**III. SUMMARY OF THE FIRST AMENDED PLAN OF REORGANIZATION**

## A. What Creditors and Interest Holders Will Receive Under The Proposed Plan

As required by the Bankruptcy Code, the First Amended Plan classifies claims and interests in various classes according to their right to priority. The First Amended Plan states whether each class of claims or interests is impaired or unimpaired. The First Amended Plan provides the treatment each class will receive.

## B. Unclassified Claims

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the First Amended Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponents have not placed the following claims in a class.

### 1. Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Debtors' Chapter 11 case which are allowed under Code section 507(a)(1).  The Code requires that all administrative claims be paid on the Effective Date of the First Amended Plan, unless a particular claimant agrees to a different treatment.

The following chart lists all of the Debtors' § 507(a)(1) administrative claims and their treatment under the First Amended Plan. (See Exhibit "F" for further information.)

-12-

| Name | Amount Owed | Treatment |
|---|---|---|
|  |  |  |
| Attorney's Fees (J.Bauer) | $8,000.00 | Paid in Full on Effective Date |
| Attorney's Fees (D.Young) | $13,500.00 | Paid in Full on Effective Date |
|  |  |  |
| Office of the U.S. Trustee Fees | 0 |  |
|  | TOTAL:$21,500 |  |

The Court must rule on all fees listed in this chart before the fees will be owed. For all fees except Clerk's Office fees and U.S. Trustee's fees, the professional in question must file and serve a fee application and the Court must rule on the application. Only the amount of fees allowed by the Court will be owed and required to be paid under the First Amended Plan.

As indicated above, the Debtors will need to pay $21,500.00 worth of administrative claims on the Effective Date of the First Amended Plan unless the claimant has agreed to be paid later or the Court has not yet ruled on the claim. As indicated elsewhere in this First Amended Disclosure Statement, Debtors will have $42,253.00 of cash on hand on the Effective Date of the First Amended Plan. The source of this cash will be funds in bank accounts.

### 2. Priority Tax Claims

The debtors have no priority tax claim obligations.

### C. Classified Claims and Interests

### 1. Classes of Secured Claims

Secured claims are claims secured by liens on property of the estate. The following chart lists all classes containing

-13-

Debtors' secured pre-petition claims and their treatment under
the First Amended Plan.  The Class #1 and the Class #2 creditors
will retain their liens under the First Amended Plan. There will
be no other modification of the Class #1 and Class #2 loan
obligations other than is set forth in the First Amended Plan.

| CLASS #1 | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT | |
|---|---|---|---|---|---|
| | Secured claim of:<br><br>● Name = Wells Fargo<br><br>● Collateral =<br><br>15954 Vose St.<br>Los Angeles, CA<br><br>● Collateral value =<br><br>$400,000<br><br>Priority of Sec.= 1st<br><br>Principal = $847,243.65 | No | Impaired | ● Pymt interval<br><br>● Pymt amt/interval<br><br>● Balloon pymt<br><br>Begin date<br><br>● End date<br><br>● Interest rate %<br><br>● Total payout % of secured portion. | =mo.<br><br>2,086<br><br>= 0<br><br>6/1/10<br><br>5/1/40<br><br>4.75%<br><br>100% |
| CLASS #2 | Secured claim of:<br><br>● Name =Wachovia<br><br>● Collateral<br><br>15811 Hart Street<br>Los Angeles, CA<br><br>● Collateral value =<br><br>$380,000<br><br>Priority of Sec.=1st<br><br>● Principal =$618,580.24 | | | ● Pymt interval<br><br>● Pymt amt/interval<br><br>● Balloon pymt<br><br>● Begin date<br><br>● End date<br><br>● Interest rate %<br><br>● Total payout % of secured portion. | =mo.<br><br>1,982<br><br>0<br><br>6/1/10<br><br>5/1/40<br><br>4.75%<br><br>100% |

## 2.   Classes of Priority Unsecured Claims

Debtors have no Code Section 507(a)(3), (4), (5), (6), and
(7) priority unsecured claims.

### 3.   Class of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a).  The following chart identifies the First Amended Plan's treatment of the class containing <u>all</u> of Debtors' general unsecured claims (see Exhibit H for detailed information about each general unsecured claim):

| CLASS #3 | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT | |
|---|---|---|---|---|
| | General unsecured claims<br><br>● Total amt of<br>  claims = $701,337.65 | yes | ● Pymt interval<br>● Pymt amt/interval<br>● Begin date<br>● End date<br>● Interest rate<br>● Total payout | = monthly<br>= $3,130<br>= 7/1/10<br>= 6/30/15<br>= 0<br>=$187,800 |

| CLASS #4 | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT | |
|---|---|---|---|---|
| | Disputed unsecured claims<br><br>-Nexus Home Solutions<br><br>● Total amt of<br>  claims = $25,260 | yes | ● Pymt interval<br>● Pymt amt/interval<br>● Begin date<br>● End date<br>● Interest rate 0%<br>● Total payout  0% | = 0<br>= 0<br>= 0<br>= 0<br>= 0<br>= 0 |

### 4.   Class(es) of Interest Holders

Interest holders are the parties who hold ownership interests (i.e., equity interest) in the Debtors.  If the Debtors are a corporation, entities holding preferred or common stock in the Debtors are interest holders.  If the Debtors are a partnership, the interest holders include both general and limited partners.  Because the Debtors are individuals, the Debtors are the interest holders.  There will be no payments to interest holders under the First Amended Plan.

-15-

**D.    Means of Effectuating the First Amended Plan**

### 1.    Funding for the First Amended Plan

The Plan will be funded by the following: funds in bank accounts,$1,400.00 per month in net earnings from the debtors, $3,638 per month in net rents from 15954 Vose St. and $2,160 in net rents from 15811 Hart St.

### 2.    Post-confirmation Management

a) Danilo Trinidad will maintain the structures at 15954 Vose St. and 15811 Hart St.

b) Lydia Trinidad will collect and account for the rents from 15954 Vose St. and 15811 Hart St. She'll pay all of the taxes,utilities, etc., in order to maintain the properties.

**(d)    Description of Expertise**

### 3.    Disbursing Agent

Lydia Trinidad shall act as the disbursing agent for the purpose of making all distributions provided for under the First Amended Plan.    The Disbursing Agent shall serve without bond and shall receive no payment for her services rendered and expenses.

**E.    Risk Factors**

The proposed First Amended Plan has the following risks: The low risk that the income from the debtors' employment and the low risk that the rents may diminish.

F.    Other Provisions of the First Amended Plan

### 1.    Executory Contracts and Unexpired Leases

**a.    Assumptions**

There are no unexpired leases to be assumed. The executory

-16-

contracts to be assumed are described at Exhibit "D".

On the Effective Date, each of the unexpired leases and executory contracts listed above shall be assumed as obligations of the reorganized Debtor.  The Order of the Court confirming the Plan shall constitute an Order approving the assumption of each executory contract listed above.  If you are a party to an executory contract to be assumed and you object to the assumption of your contract, you must file and serve your objection to the First Amended Plan within the deadline for objecting to the confirmation of the First Amended Plan. See Section {I.B.3.} of this document for the specific date.

### b.    Rejections

On the Effective Date, no executory contracts or unexpired leases will be rejected:

### 2.Changes in Rates Subject to Regulatory Commission Approval

This Debtor is not subject to governmental regulatory commission approval of its rates.

### 3.    Retention of Jurisdiction.

The Court will retain jurisdiction to the extent provided by law.

### G.    Tax Consequences of First Amended Plan

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE FIRST AMENDED PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues this

-17-

First Amended Plan may present to the Debtors.  The Proponent
CANNOT and DOES NOT represent that the tax consequences
contained below are the only tax consequences of the Plan
because the Tax Code embodies many complicated rules which make
it difficult to state completely and accurately all the tax
implications of any action.

The following are the tax consequences which the First
Amended Plan will have on the Debtors' tax liability: Their real
property taxes may decrease if the tax assessor can be persuaded
to use the values for 15954 Vose St. and 15811 Hart St. that are
set forth in this First Amended Disclosure Statement, the
appraisals and the First Amended Plan.

## IV.

### CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THIS
FIRST AMENDED PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS
BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY
COMPLEX.  The following discussion is intended solely for the
purpose of alerting readers about basic confirmation issues,
which they may wish to consider, as well as certain deadlines
for filing claims. The proponent CANNOT and DOES NOT represent
that the discussion contained below is a complete summary of the
law on this topic.

Many requirements must be met before the Court can confirm
a Plan.  Some of the requirements include that the First Amended
Plan must be proposed in good faith, acceptance of the First

-18-

Amended Plan, whether the First Amended Plan pays creditors at

least as much as they would receive in a Chapter 7 liquidation,

and whether the First Amended Plan is feasible.  These

requirements are <u>not</u> the only requirements for confirmation.

## A.    Who May Vote or Object

### 1. Who May Object to Confirmation of the First Amended Plan

Any party in interest may object to the confirmation of the

Plan, but as explained below not everyone is entitled to vote to

accept or reject the Plan.

### 2.    Who May Vote to Accept/Reject the First Amended Plan

A creditor or interest holder has a right to vote for or

against the Plan if that creditor or interest holder has a claim

which is both (1) allowed or allowed for voting purposes and (2)

classified in an impaired class.

### a.    What Is an Allowed Claim/Interest

As noted above, a creditor or interest holder must first

have an <u>allowed claim or interest</u> to have the right to vote.

Generally, any proof of claim or interest will be allowed,

unless a party in interest brings a motion objecting to the

claim.   When an objection to a claim or interest is filed, the

creditor or interest holder holding the claim or interest cannot

vote unless the Court, after notice and hearing, either

overrules the objection or allows the claim or interest for

voting purposes.

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE WAS

March 22, 2010. A creditor or interest holder may have an

allowed claim or interest even if a proof of claim or interest

was not timely filed.  A claim is deemed allowed if (1) it is

scheduled on the Debtors' schedules and such claim is not

scheduled as disputed, contingent, or unliquidated, and (2) no

party in interest has objected to the claim. An interest is

deemed allowed if it is scheduled and no party in interest has

objected to the interest. Consult Exhibits F through L to see

how the Proponent has characterized your claim or interest.

### b.    What Is an Impaired Claim/Interest

As noted above, an allowed claim or interest only has the

right to vote if it is in a class that is _impaired_ under the

First Amended Plan. A class is impaired if the First Amended

Plan alters the legal, equitable, or contractual rights of the

members of that class. For example, a class comprised of general

unsecured claims is impaired if the First Amended Plan fails to

pay the members of that class 100% of what they are owed.

In this case, the Proponents believes that classes #1, #2

#3 and #4 are impaired and that holders of claims in each of

these classes are therefore entitled to vote to accept or reject

the First Amended Plan (with the exception of Class #4 which

receives zero under the First Amended Plan and is deemed to have

rejected the Plan). The Proponents believe that no classes are

unimpaired. Parties who dispute the Proponents' characterization

of their claim or interest as being impaired or unimpaired may

file an objection to the First Amended Plan contending that the

Proponent has incorrectly characterized the class.

### 3. Who is **Not** Entitled to Vote

The following four types of claims are not entitled to
vote: (1) claims that have been disallowed; (2) claims in
unimpaired classes; (3) claims entitled to priority pursuant to
Code sections 507(a)(1), (a)(2), and (a)(8); and (4) claims in
classes that do not receive or retain any value under the First
Amended Plan. Claims in unimpaired classes are not entitled to
vote because such classes are deemed to have accepted the First
Amended Plan. Claims entitled to priority pursuant to Code
sections 507(a)(1), (a)(2), and (a)(7) are not entitled to vote
because such claims are not placed in classes and they are
required to receive certain treatment specified by the Code.
Claims in classes that do not receive or retain any value under
the First Amended Plan do not vote because such classes are
deemed to have rejected the Plan. EVEN IF YOUR CLAIM IS OF THE
TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO
THE CONFIRMATION OF THE FIRST AMENDED PLAN.

### 4. Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a
secured claim and in part as an unsecured claim is entitled to
accept or reject the First Amended Plan in both capacities by
casting one ballot for the secured claim and one for the
unsecured claim.

### 5. Votes Necessary to Confirm the First Amended Plan

If impaired classes exist, the Court cannot confirm the

-21-

First Amended Plan unless (1) at least one impaired class has

accepted the Plan without counting the votes of any insiders

within that class, and (2) all impaired classes have voted to

accept the First Amended Plan, unless the Plan is eligible to be

confirmed by "cramdown" on non-accepting classes, as discussed

in Section {IV.A.8.}.

### 6. Votes Necessary for a Class to Accept the First Amended Plan

A class of claims is considered to have accepted the First

Amended Plan when more than one-half (1/2) in number and at

least two-thirds (2/3) in dollar amount of the claims which

actually voted, voted in favor of the First Amended Plan.  A

class of interests is considered to have accepted the First

Amended Plan when at least two-thirds (2/3) in amount of the

interest-holders of such class which actually voted, voted to

accept the First Amended Plan.

### 7.   Treatment of Nonaccepting Classes

As noted above, even if all impaired classes do not accept

the proposed First Amended Plan, the Court may nonetheless

confirm the First Amended Plan if the nonaccepting classes are

treated in the manner required by the Code.  The process by

which nonaccepting classes are forced to be bound by the terms

of the First Amended Plan is commonly referred to as "cramdown."

The Code allows the Plan to be "crammed down" on nonaccepting

classes of claims or interests if it meets all consensual

requirements except the voting requirements of 1129(a)(8) and

the First Amended Plan is "discriminate unfairly" and is

"fair and equitable" toward each impaired class that has not

voted to accept the First Amended Plan as referred to in 11

U.S.C. § 1129(b) and applicable case law.

**8.    Request for Confirmation Despite Nonacceptance by
Impaired Class(es)**

The parties proposing this Plan will ask the Court to

confirm this Plan by cramdown on impaired classes #1, #2, #3 and

#4 if any of these classes do not vote to accept the Plan.

Please note that there are no classes in the proposed First

Amended Plan treatment described by this First Amended

Disclosure Statement that cannot be crammed down.

**B.    Liquidation Analysis**

Another confirmation requirement is the "Best Interest

Test", which requires a liquidation analysis.  Under the Best

Interest Test, if a claimant is in an impaired class and that

claimant does not vote to accept the First Amended Plan, then

that claimant must receive or retain under the First Amended

Plan property of a value not less than the amount that such

holder would receive or retain if the Debtors were liquidated

under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtors' assets are usually sold

by a Chapter 7 trustee. Secured creditors are paid first from

the sales proceeds of properties on which the secured creditor

has a lien.  Administrative claims are paid next.  Next,

unsecured creditors are paid from any remaining sales proceeds,

according to their rights to priority. Unsecured creditors with

the same priority share in proportion to the amount of their

allowed claim in relationship to the amount of total allowed

unsecured claims. Finally, interest holders receive the balance

that remains after all creditors are paid, if any.

For the Court to be able to confirm this First Amended

Plan, the Court must find that all creditors and interest

holders who do not accept the First Amended Plan will receive at

least as much under the Plan as such holders would receive under

a Chapter 7 liquidation. The First Amended Plan Proponents

maintain that this requirement is met here for the following

reasons:

a) Pursuant to the Order to Pay Adequate Protection on

April 6, 2010, debtors' paid post-petition adequate protection

payments to Wells Fargo for the period from 12/18/09 through

5/31/10, in the amount of $4,000 per month, for a total sum of

$21,677.00.  In their First Amended Disclosure Statement and

First Amended Plan, the debtors propose to repay the secured

portion of the Wells Fargo loan, in the amount of $400,000, at

4.75% interest, over 30 years, in equal monthly payments of

$2,086.00.

b) Debtors propose to pay adequate protection payments to

Wachovia, when Wachovia accepts, of $2,700 per month from

12/18/10 to June 30, 2010.  in the total amount of $17,332.

b)  The debtors propose to repay the secured portion of

the Wachovia loan from the effective date, in the amount of

-24-

$380,000, with interest thereon, over 20 years, in equal

monthly payments of $1,982.00.

    c)    The debtors propose to pay the unsecured class 26.7%

of their claims, by paying a total of $3,130 per month to this

Class #3 over 5 years.  The unsecured class includes the

    unsecured portion of the Wells Fargo loan on 15954 Vose St.

in the total sum of $447,243.00 – Wells Fargo's 26.7% payment in

the unsecured class will equal $2,003 per month, for a total

payment over 5 years of $120,180.00.  The unsecured class also

includes the unsecured portion of the Wachovia loan on

    15811 Hart St., in the amount of $238,580.00 – Wachovia's

26.7% payment in the unsecured class will equal $1,064.00 per

month,

for a total payment over 5 years in the amount of $63,840.00.

    Below is a demonstration, in balance sheet format, that all

creditors will receive at least as much under the First Amended

Plan as such creditor would receive under a Chapter 7

liquidation.  See Exhibit E for a detailed explanation of how

the following assets are valued. This information is provided

from Debtors' Schedules A, B, D and F and their Debtor in

Possession account balances.

**ASSETS VALUE AT LIQUIDATION VALUES:**

```
CURRENT ASSETS
a. Cash on hand                                       $ 18,588
b. Accounts receivable                                $      0
c. Savings bonds left after payment of  adequate
   protection through to Wachovia through 6/1/10:     $  9,268
e.    Exempt IRAs                                     $ 30,848

TOTAL CURRENT ASSETS                                  $ 58,704
```

FIXED ASSETS

| | | | |
|---|---|---|---|
| a. | Office furniture & equipment | $ | 500 |
| b. | Machinery & equipment | $ | 0 |
| c. | Automobiles | $ | 7,500 |
| d. | Building & Land | | $780,000 |

TOTAL FIXED ASSETS                      $788,000

OTHER ASSETS

| | | | |
|---|---|---|---|
| a. | Customer list | $ | 0 |
| b. | Other intangibles | $ | 0 |

TOTAL OTHER ASSETS                      $      0

**TOTAL ASSETS AT LIQUIDATION VALUE**        $846,704
                                        ==========

**Less:**
Secured creditor's recovery (net after trustee
fees and administrative expenses)            $780,000
**Less:**
Chapter 7 trustee fees and expenses (at 5% of    $ 39,000
funds to be distributed)
**Less:**
Chapter 11 administrative expenses           $ 21,500
**Less:**
Priority claims,
excluding administrative expense claims       $      0
**Less:**
Debtor's claimed exemptions                  $ 30,848
                                        ==========
(1) Balance for unsecured claims             $ 24,644

(2) Total amt of unsecured claims            $701,337


**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WOULD RECEIVE
    OR RETAIN IN A CH. 7 LIQUIDATION: =    3.5%**
**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WILL RECEIVE
    OR RETAIN UNDER THIS FIRST AMENDED PLAN: =    26.7%**

Below is a demonstration, in tabular format, that all
creditors and interest holders will receive at least as much
under the First Amended Plan as such creditor or holder would
receive under a Chapter 7 liquidation.

| CLAIMS & CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION |
|---|---|---|
| Administrative Claims | 100 percent | 100 percent |

| Priority Tax Claims | 0 | 0 |
|---|---|---|
| Class 1 -   15954 Vose St. | 100 percent | 100 percent |
| Class 2 -   15811 Hart St. | 100 percent | 100 percent |
| Class 3 -   unsecured claims | 26.7 percent | 3.5 percent |
| Class 4 | 0 percent | 0 percent |

## C.   Feasibility

Another requirement for confirmation involves the
feasibility of the First Amended Plan, which means that
confirmation of the Plan is not likely to be followed by the
liquidation, or the need for further financial reorganization,
of the Debtors or any successor to the Debtor under the First
Amended Plan, unless such liquidation or reorganization is
proposed in the First Amended Plan.

There are at least two important aspects of a feasibility
analysis. The first aspect considers whether the Debtor will
have enough cash on hand on the Effective Date of the Plan to
pay all the claims and expenses which are entitled to be paid on
such date.  The First Amended Plan Proponents maintain that this
aspect of feasibility is satisfied as illustrated here:

Cash Debtor will have on hand by Effective Date            $ 42,253

**To Pay:** Adequate Protection to Wells Fargo on          -    4,000
6/1/30/Per Court Order
     Wachovia payments addressed on page 25,
above at Current Assets, c.                                -   21,500
**To Pay:** Administrative claims

        -        0
**To Pay:** Statutory costs & charges

      -      650
**To Pay:** Other Plan Payments due
     on Effective Date - Trustee's Quarterly Fee

Balance after paying these amounts...............   $16,103.00

The sources of the cash Debtor will have on hand by the
Effective  Date, as shown above are:

| | |
|---|---|
| $18,588.99 | Cash in DIP Account now |
| $14,396.00 | Additional cash DIP will accumulate from net earnings & rents from now to Effective Date |
| $0.00 | Borrowing |
| $9,268.00 | Capital Contributions - cashed in bonds |
| $0.00 | Other |
| $42,252.99 | **Total** |

The debtors do not contemplate borrowing at this time.

The second aspect considers whether the Proponents will
have enough cash over the life of the First Amended Plan to make
the required payments.

The Proponents have provided financial statements which
include both historical and projected financial information.
Please refer to Exhibit B for the relevant financial statements.
YOU ARE ADVISED TO CONSULT WITH YOUR FINANCIAL ADVISOR IF YOU
HAVE ANY QUESTIONS PERTAINING TO THESE  STATEMENTS.

In summary, the Plan proposes to pay $7,198.00 each
month to Class #1, Class #2, members of Class #3 and to the U.S.
Trustee.  As Debtors' financial projections demonstrate, Debtors
will have an average cash flow, after paying operating expenses
and post-confirmation taxes, of $7,198.00 each month for the
life of the Plan.  The final payments under the First Amended
Plan are expected to be paid on 6/1/40. The First Amended Plan
Proponents contend that Debtors' financial projections are

-28-

feasible.  As shown by Debtors' historical financial statements,

Debtors' average monthly cash flow, after paying operating

expenses and post-confirmation taxes, in the three years

preceding the filing of this bankruptcy case is $7,223.00.

Debtors' average monthly cash flow, after paying operating

expenses and post-confirmation taxes, during the bankruptcy

case, since they implemented procedures to increase their net

income in March 2010, is $7,198.00.

## V.

### EFFECT OF CONFIRMATION OF PLAN

**A.    Discharge**

This First Amended Plan provides that upon payment in full

of proposed plan payments to the unsecured creditors, Debtors

shall be discharged of liability for payment of debts incurred

before confirmation of the Plan, to the extent specified in

11 U.S.C.§1141.  However, the discharge will not discharge any

liability imposed by the First Amended Plan.

**B.    Revesting of Property in the Debtor**

Except as provided in Section {V.E.}, and except as

provided elsewhere in the First Amended Plan, the confirmation

of the First Amended Plan revests all of the property of the

estate in the Debtors.

**C.    Modification of Plan**

The Proponents of the First Amended Plan may modify the

First Amended Plan at any time before confirmation.  However,

the Court may require a new disclosure statement and/or revoting

on the First Amended Plan.

The Proponents of the First Amended Plan may also seek to
modify the First Amended Plan at any time after confirmation
only if (1) the First Amended Plan has not been substantially
consummated and (2) the Court authorizes the proposed
modifications after notice and a hearing.

**D.   Post-Confirmation Status Report**

Within 120 days of the entry of the order confirming the
First Amended Plan, the Proponents shall file a status report
with the Court explaining what progress has been made toward
consummation of the confirmed First Amended Plan.  The status
report shall be served on the United States Trustee, the twenty
largest unsecured creditors, and those parties who have
requested special notice. Further status reports shall be filed
every 120 days and served on the same entities.

**E.   Quarterly Fees**

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to
date of confirmation shall be paid to the United States Trustee
on or before the effective date of the First Amended Plan.
Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after
confirmation shall be paid to the United States Trustee in
accordance with 28 U.S.C. § 1930(a)(6) until entry of a final
decree, or entry of an order of dismissal or conversion to
chapter 7.

**F.   Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to

-30-

convert or dismiss the case under § 1112(b), after the First

Amended Plan is confirmed, if there is a default in performing

the First Amended Plan.  If the Court orders the case converted

to Chapter 7 after the Plan is confirmed, then all property that

had been property of the Chapter 11 estate, and that hasn't been

disbursed pursuant to the First Amended Plan, will revest in the

Chapter 7 estate. The automatic stay will be reimposed upon the

revested property, but only to the extent that relief from stay

was not previously authorized by the Court during this case.

The order confirming the First Amended Plan may also be

revoked under very limited circumstances. The Court may revoke

the order if the order of confirmation was procured by fraud and

if the party in interest brings an adversary proceeding to

revoke confirmation within 180 days after the entry of the order

of confirmation.

## G.   Final Decree

Once the estate has been fully administered per Bankruptcy

Rule 3022, the Proponents, or other party as the Court

shall designate in the First Amended Plan Confirmation Order,

shall file a motion with the Court to obtain a final decree to

close the case.

<u>Debtors:</u>

Date: 5/5/10 _____         _____
                                Lydia Trinidad

Date: 5/5/10 _____         _____
                                Danilo Trinidad


<u>Attorneys for Debtors:</u>         <u>John H. Bauer and Debra C. Young</u>


Date: 5/5/10 _____         _____
                                By:   Debra C. Young

# ATTACHMENT "1"

Case 1:09-bk-27152-GM  Doc 75  Filed 05/07/10  Entered 05/07/10 11:54:09  Desc
In Re:           Danilo S & Lydia F Tr...  Main Document  Page 23 of 368           1:09-bk-27152
                                        Debtor                                      (if known)

## SCHEDULE I - CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

The column labeled "Spouse" must be completed in all cases filed by joint debtors and by a married debtor, whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. Do not state the name of any minor child. The average monthly income calculated on this form may differ from the current monthly income calculated on Form 22A, 22B, or 22C.

| Debtor's Marital Status: MARRIED | DEPENDENTS OF DEBTOR AND SPOUSE | | | |
|---|---|---|---|---|
| | RELATIONSHIP | Daughter | AGE | 24 |
| | | Daughter | | 20 |
| | | Son | | 12 |

| Employment: | DEBTOR | SPOUSE |
|---|---|---|
| Occupation | Handyman | Autocad Drafter |
| Name of Employer | N/A | Arthur Bannick Architect |
| How Long Employed | N/A | 3 years, 11 months |
| Address of Employer | N/A | 7141 Valjean Ave Van Nuys, CA  91406 |

**Income:** (Estimate of average monthly income)

| | | DEBTOR | | SPOUSE |
|---|---|---|---|---|
| 1. Current monthly gross wages, salary, and commissions (Prorate if not paid monthly.) | $ | 500.00 | $ | 3,886.00 |
| 2. Estimated monthly overtime | $ | | $ | |
| 3. SUBTOTAL | $ | 500.00 | $ | 3,886.00 |
| 4. LESS PAYROLL DEDUCTIONS | | | | |
| a. Payroll taxes and social security | $ | | $ | 684.02 |
| b. Insurance | $ | | $ | 168.00 |
| c. Union dues | $ | | $ | |
| d. Other (Specify): | $ | | $ | |
| 5. SUBTOTAL OF PAYROLL DEDUCTIONS | $ | 0.00 | $ | 852.02 |
| 6. TOTAL NET MONTHLY TAKE HOME PAY | $ | 500.00 | $ | 3,033.98 |
| 7. Regular income from operation of business or profession or firm (Attach detailed statement) | $ | | $ | 7,900.00 |
| 8. Income from real property | $ | | $ | |
| 9. Interest and dividends | $ | | $ | |
| 10. Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above | $ | | $ | |
| 11. Social security or other government assistance (Specify): | $ | | $ | |
| 12. Pension or retirement income | $ | | $ | |
| 13. Other monthly income Specify: | $ | | $ | |
| 14. SUBTOTAL OF LINES 7 THROUGH 13 | $ | 0.00 | $ | 7,900.00 |
| 15. TOTAL MONTHLY INCOME (Add amounts shown on lines 6 and 14) | $ | 500.00 | $ | 10,933.98 |
| 16. TOTAL COMBINED MONTHLY INCOME | $  11,433.98 | | | |

17. Describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document:

Increase in income from real property

Debtor

(if known)

# SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)

Complete this schedule by estimating the average monthly expenses of the debtor and the debtor's family. Pro rate any payments made bi-weekly, quarterly, semi-annually, or annually to show monthly rate. The average monthly expenses calculated on this form may differ from the deductions from income allowed on Form 22A or 22C.

☐ Check this box if a joint petition is filed and debtor's spouse maintains a separate household. Complete a separate schedule of expenditures labeled "Spouse".

| | | |
|---|---|---:|
| 1. Rent or home mortgage payment (include lot rented for mobile home) | $ | 9254.58 |
|     a. Are real estate taxes included? ☒ Yes ☐ No | | |
|     b. Is property insurance included? ☒ Yes ☐ No | | |
| 2. Utilities: a. Electricity and heating fuel | $ | 1148.68 |
|     b. Water and sewer | $ | |
|     c. Telephone | $ | 165.00 |
|     d. Other | $ | |
| 3. Home maintenance (repairs and upkeep) | $ | |
| 4. Food | $ | 700.00 |
| 5. Clothing | $ | 230.00 |
| 6. Laundry and dry cleaning | $ | 50.00 |
| 7. Medical and dental expenses | $ | 180.00 |
| 8. Transportation (not including car payments) | $ | 400.00 |
| 9. Recreation, clubs and entertainment, newspapers, magazines | $ | 642.81 |
| 10. Charitable contributions | $ | 50.00 |
| 11. Insurance (not deducted from wages or included in home mortgage payments) | | |
|     a. Homeowner's or renters | $ | 217.07 |
|     b. Life | $ | 167.00 |
|     c. Health | $ | 18.00 |
|     d. Auto | $ | 200.00 |
|     e. Other | $ | |
| 12. Taxes (not deducted from wages or included in home mortgage payments) | $ | 1101.75 |
|     Specify: | | |
|     Property Taxes | | |
| 13. Installment payments: (In chapter 11, 12 or 13 cases, do not list payments to be included in the plan) | | |
|     a. Auto | $ | |
|     b. Other | $ | |
|     c. Other | $ | |
| 14. Alimony, maintenance, and support paid to others | $ | |
| 15. Payments for support of additional dependents not living at your home | $ | |
| 16. Regular expenses from operation of business, profession, or farm (attach detailed statement) | $ | 805.73 |
| 17. Other  Education | $ | 230.00 |
| 18. AVERAGE MONTHLY EXPENSES (Total lines 1-17.) | $ | 15,560.62 |

19. Describe any increase or decrease in expenditures reasonably anticipated to occur within the year following the filing of this document:

## 20. STATEMENT OF MONTHLY NET INCOME

| | | |
|---|---|---:|
| a. Average monthly income from Line 15 of Schedule I | $ | 11,433.98 |
| b. Average monthly expenses from Line 18 above | $ | 15,660.62 |
| c. Monthly net income (a. minus b.) | $ | -4,226.64 |

# ATTACHMENT "2"