1  Debra C. Young
   Attorney at Law
2  610 Anacapa Street
   Santa Barbara, CA   93101
3  State Bar No. 117263
   (805) 403-2213
4

5  John Bauer, Attorney
   16103 W. Augusta
6  Litchfield Park, Arizona   85340
   State Bar No. 91471
7  (623) 322-3859

8  Attorneys for Debtors, Danilo and Lydia Trinidad

9

10

11          **UNITED STATES BANKRUPTCY COURT**

12          **CENTRAL DISTRICT OF CALIFORNIA**

13
   In re                          **Bk. No.** 09-bk-27152 GM
14
   DANILO TRINIDAD and            A Case Under Chapter 11 of the
15 LYDIA TRINDAD,                 Bankruptcy Code (11 U.S.C. 1101
                                  et. seq.)
16                    Debtors
                                  **SECOND AMENDED DISCLOSURE**
17                                **STATEMENT DESCRIBING SECOND**
                                  **AMENDED PLAN.**
18

19                                  **Disclosure Statement Hearing**
   Highlighted words and
20 numbers are different          Date:  June 8, 2010
   from the words and            Time:  10:00 a.m.
21 numbers in the Original       Ctrm:  Dept. 303
   Disclosure Statement.                21041 Burbank Blvd.
22                                      Woodland Hills, CA 91367

23
                                    **Plan Confirmation Hearing**
24
                                  Date:  _____
25                                Time:  _____
26                                Ctrm:  Dept. 303
                                        21041 Burbank Blvd.
27                                      Woodland Hills, CA 91367

28

**FILED**

**MAY 2 8 2010**

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:_____ Deputy Clerk

# TABLE OF CONTENTS

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . .   1
A.   Purpose of This Document . . . . . . . . . . . .   1
B.   Deadlines for Voting and Objecting; Date of Plan
     Confirmation Hearing . . . . . . . . . . . . . .   2
1.   Time and Place of the Confirmation Hearing . . . .   3
2.   Deadline for Voting For or Against the Plan . . . .   3
3.   Deadline for Objecting to Confirmation of the Plan .   3
4.   Identity of Person to Contact for More
5.   Information Regarding the Plan . . . . . . . . . .   3
C.   Disclaimer . . . . . . . . . . . . . . . . . . .   3

II.  BACKGROUND . . . . . . . . . . . . . . . . . . .   4
A.   Description and History of the Debtor's Business . .   4
B.   Principals/Affiliates of Debtor's Business . . . .   4
C.   Management of the Debtor Before and After the
CI.  Bankruptcy . . . . . . . . . . . . . . . . . . .   4
D.   Events Leading to Chapter 11 Filing . . . . . . .   4
E.   Significant Events . . . . . . . . . . . . . . . .   4
1.   Bankruptcy Proceedings . . . . . . . . . . . . .   4
2.   Other Legal Proceedings . . . . . . . . . . . . .   4
3.   Actual and Projected Recovery of Preferential or
     Fraudulent Transfers . . . . . . . . . . . . . .   4
4.   Procedures Implemented to Resolve Financial
     Problems . . . . . . . . . . . . . . . . . . . .   5
5.   Current and Historical Financial
     Conditions . . . . . . . . . . . . . . . . . . .   5

III. SUMMARY OF THE PLAN OF REORGANIZATION . . . . . . .   5
A.   What Creditors and Interest Holders Will Receive
     Under the Proposed Plan . . . . . . . . . . . . .   5
B.   Unclassified Claims . . . . . . . . . . . . . . .   5
1.   Administrative Expenses . . . . . . . . . . . . .   6
2.   Priority Tax Claims . . . . . . . . . . . . . . .   7
C.   Classified Claims and Interests . . . . . . . . . .   7
1.   Classes of Secured Claims . . . . . . . . . . . .   7
2.   Classes of Priority Unsecured Claims . . . . . . .   8
3.   Classes of General Unsecured Claims . . . . . . .   9
4.   Class(es) of Interest Holders . . . . . . . . . .   10
D.   Means of Effectuating the Plan . . . . . . . . . .   10
1.   Funding for the Plan . . . . . . . . . . . . . .   10
2.   Post-Confirmation Management . . . . . . . . . .   10
3.   Disbursing Agent . . . . . . . . . . . . . . . .   10
E.   Risk Factors . . . . . . . . . . . . . . . . . .   10
F.   Other Provisions of the Plan . . . . . . . . . . .   11
     1.   Executory Contracts and Unexpired Leases . .   11

     a.   Assumptions . . . . . . . . . . . . . . 11
     b.   Rejections . . . . . . . . . . . . . . 11
2.  Changes in Rates Subject to Regulatory Approval . 12
3.  Retention of Jurisdiction . . . . . . . . . . 12
G.  Tax Consequences of Plan . . . . . . . . . . . 12

IV.  **CONFIRMATION REQUIREMENTS AND PROCEDURES** . . . . . 13
A.  Who May Vote or Object . . . . . . . . . . . . 13
  1.   Who May Object to Confirmation of the
     Plan . . . . . . . . . . . . . . . . . 13
2.  Who May Vote to Accept/Reject the Plan . . . . . 13
     a.   What is an Allowed Claim/Interest . . . 13
     b.   What Is an Impaired Claim/Interest . . . 14
3.  Who is <u>Not</u> Entitled to Vote . . . . . . . . . . 15
4.  Who Can Vote in More Than One Class . . . . . . . 15
5.  Votes Necessary to Confirm the Plan . . . . . . 16
6.  Votes Necessary for a Class to Accept the Plan . . 16
7.  Treatment of Nonaccepting Classes . . . . . . . . 16
8.  Request for Confirmation Despite Nonacceptance
    by Impaired Class(es) . . . . . . . . . . . . . 17
B.  Liquidation Analysis . . . . . . . . . . . . . 17
C.  Feasibility . . . . . . . . . . . . . . . . . 20

V.  **EFFECTS OF CONFIRMATION OF PLAN** . . . . . . . . . 22
A.  Discharge . . . . . . . . . . . . . . . . . 22
B.  Revesting of Property in the Debtor . . . . . . 22
C.  Modification of Plan . . . . . . . . . . . . . 22
D.  Post-Confirmation Status Report . . . . . . . . 23
E.  Quarterly Fees . . . . . . . . . . . . . . . 23
F.  Post-Confirmation Conversion/Dismissal . . . . . 23
G.  Final Decree . . . . . . . . . . . . . . . . . 24

VI.  **SUPPORTING DECLARATIONS** . . . . . . . . . . . . 25

Attachment 1
Attachment 2
EXHIBIT A - LIST OF ALL ASSETS . . . . . . . . . 26
EXHIBIT B - FINANCIAL STATEMENT . . . . . . . . . 27
EXHIBIT C - UNEXPIRED LEASES TO BE ASSUMED . . . . 28
EXHIBIT D - EXECUTORY CONTRACTS TO BE ASSUMED . . . . 29
EXHIBIT E - LIQUIDATION ANALYSIS . . . . . . . . 30
EXHIBIT F - LIST OF ADMINISTRATIVE EXPENSE CLAIMS . . . 31
EXHIBIT G - LIST OF PRIORITY UNSECURED CLAIMS . . . . 32
EXHIBIT H - LIST OF GENERAL UNSECURED CLAIMS . . . . 38
EXHIBIT I - LIST OF EQUITY INTERESTS. . . . . . . .

# I.

## INTRODUCTION

Danilo and Lydia Trinidad are the Debtors in Possession in

a Chapter 11 bankruptcy case.  On December 18, 2009, they

commenced a bankruptcy case by filing a voluntary Chapter 11

petition under the  United States Bankruptcy Code ("Code"),

11 U.S.C. § 101 et seq..  Chapter 11 allows the Debtors, and

under some circumstances, creditors and other parties in

interest, to propose a plan of reorganization ("Plan"). The

Plan may provide for the Debtors to reorganize by continuing

to operate, to liquidate by selling assets of the estate, or a

combination of both. Danilo and Lydia Trinidad are the parties

proposing the Second Amended Plan sent to you in the same

envelope as this document.  THE DOCUMENT YOU ARE READING IS

THE SECOND AMENDED DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.

This is a reorganizing plan.  In other words, the Proponents

seek to accomplish payments under the Second Amended Plan by

treating one of their mortgage debts as a Section 1111(b)

secured claim, treating their other mortgage debt as an

unsecured debt, by paying the remaining secured portion of the

mortgage debts over time, and by paying a percentage of their

unsecured debt from their disposable rental and earned income.

The Effective Date of the proposed Second Amended Plan is

August 1, 2010.

**A.    Purpose of This Document**

This Second Amended Disclosure Statement summarizes what is in the Second Amended Plan, and tells you certain information about the Second Amended Plan and the process the Court follows in deciding whether or not to confirm the Second Amended Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

**(1)    WHO CAN VOTE OR OBJECT,**

**(2)    WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION,**

**(3)    THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY,**

**(4)    WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE SECOND AMENDED PLAN,**

**(5)    WHAT IS THE EFFECT OF CONFIRMATION, AND**

**(6)    WHETHER THIS SECOND AMENDED PLAN IS FEASIBLE.**

This Second Amended Disclosure Statement cannot tell you everything about your rights.  You should consider consulting your own lawyer to obtain more specific advice on how this Second Amended Plan will affect you and what is the best

course of action for you.  Be sure to read the Second Amended

Plan as well as the Second Amended Disclosure Statement.  If

there are any inconsistencies between the Second Amended Plan

and the Second Amended Disclosure Statement, the Second

Amended Plan provisions will govern.

The Code requires that this Second Amended Disclosure

Statement  contain "adequate information" concerning the

Second Amended Plan.  The Bankruptcy Court("Court") will

decide on June 8, 2010 whether to approve this document as an

adequate Second Amended Disclosure Statement, containing

enough information to enable parties affected by the Second

Amended Plan to make an informed judgment about the Second

Amended Plan. Any party can now solicit votes for or against

the Second Amended Plan.

**B.    Deadlines for Voting and Objecting; Date of Second
Amended Plan Confirmation Hearing.**

THE COURT HAS NOT YET CONFIRMED THE SECOND AMENDED PLAN

DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE

TERMS OF THE SECOND AMENDED PLAN ARE NOT YET BINDING ON

ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS THE SECOND

AMENDED PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTORS AND

ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

**1.    Time and Place of the Confirmation Hearing**

The hearing where the Court will determine whether or not to

confirm the Second Amended Plan will take place on _____,

at _____ {A.M./P.M.}, in Courtroom 303, {U.S. Bankruptcy

Court, Central District of California, 21041 Burbank Blvd.,

Woodland Hills, CA   91367.

**2.   Deadline For Voting On the Second Amended Plan**

If you are entitled to vote, it is in your best interest to

timely vote on the enclosed ballot and return the ballot in

the enclosed envelope to Debra C. Young, Attorney at Law,

610 Anacapa Street, Santa Barbara, CA   93101.

Your ballot must be received by _____or it will not be

counted.

**3.   Deadline For Objecting to the Confirmation of the Second
Amended Plan**

Objections to the confirmation of the Second Amended Plan must

be filed with the Court and served upon Debra C. Young,

Attorney at Law, 610 Anacapa Street, Santa Barbara, CA   93101

by _____.

**4.   Identity of Person to Contact for More Information
        Regarding the Plan**

Any interested party desiring further information about the

Second Amended Plan should contact: Debra C. Young, Attorney

at Law, 610 Anacapa Street, Santa Barbara, CA   93101,

(805) 403-2213.

**C.   Disclaimer**

1  The financial data relied upon in formulating the Second

2  Amended Plan is based on:

3  a) Debtors' Schedule I and Schedule J, attached hereto as

4  Attachment "1",

5  b) Schedule A, Schedule B, and Schedule C, attached hereto as

6  Attachment "2".

7

8  c) Changes in expenses since the filing of the debtors'

9  Schedules which are enumerated herein,

10 d) The Statements of  Income for Vose Street for 2007 through

11 2009, attached as Exhibit"B".

12 e) The Statements of Income for Hart Street for 2007 through

13 2009, attached as Exhibit"B".

14 f) The Statements of Income-Projection for Vose Street through

15 December 31, 2010, the Statements of Income-Projection

16 for Hart St., and the Statement of Income – Salaries and Wages

17 for Hart St., and the Statement of Income – Salaries and Wages

18 are attached as Exhibit"B".

19      The accounting information contained in Exhibit "B" is

20 provided by Lydia Trinidad. The Plan Proponents represent that

21 everything stated in the Second Amended Disclosure Statement

22 is true to the Proponents' best knowledge.  The Court has not

23 yet determined whether or not the Plan is confirmable and

24 makes no recommendation as to whether or not you should

25 support or oppose the Second Amended Plan.

26

27

28                         Page 8

## II.

### BACKGROUND

**A.   Description and History of the Debtors' Business**

Danilo Trinidad, an individual debtor, was a contractor; who
did improvement work to the subject homes.  Now, due to
economic difficulties, he does repair work part time and
maintains their properties. Lydia Trinidad works full time for
an architect as an Autocad Drafter.  The Debtors own 100% of
two rental properties described as:

> 1) 15954 Vose St., Van Nuys, CA  91406, and

> 2) 15811 Hart St., Van Nuys, CA 91406.

**B.   Principals/Affiliates of Debtors' Business**

There are no principals/affiliates of debtors' business.

**C.   Management of the Debtor Before and After the Bankruptcy**

The debtors have been the sole managers of their two rental
properties before, during and after the bankruptcy.

**D.   Events Leading to Chapter 11 Filing**

Here is a brief summary of the circumstances that led to the
filing of this Chapter 11: At one time, the 15954 Vose St.
property had a value of about $850,000, and the 15811 Hart St.
property had a value of about $620,000, for a combined value
of $1,470,000.00.  The debtors relied on those values for
their financial solvency.  With the 2008 recession, the value
of these two properties declined to a combined value of

$780,000.00. Also in 2008, the debtors experienced a decline in the amount of rents they could charge. As a result, the debtors could not make their mortgage payments. On December 18, 2009, they filed this Chapter 11 petition in order to stop a foreclosure, and to reorganize.

**E.   Significant Events During the Bankruptcy**

**1.   Bankruptcy Proceedings**

The following is a chronological list of significant events which have occurred <u>during</u> this case:

a)   On 2/2/10, Debtors filed their Application to Employ Appraiser Bill Martin.

b)   On 2/6/10, Wells Fargo, et. al., filed their Notice of Security Interest in Rents and Profits.

c)   On 2/22/10, Debtors filed their Application to Employ Attorneys John Bauer and Debra C. Young, which the court subsequently approved.

d)   On 3/4/10, with respect to 15954 Vose St., Debtors filed their Motion for Authority to Use Cash Collateral and Proposal to Pay Adequate Protection. This motion was heard by the court on April 6, 2010 at 10:00 a.m.  Judge Mund ordered the debtors to pay Wells Fargo Bank adequate protection payments of $4,000 per month from 12/18/10 to May 31, 2010. Debtors have paid adequate protection to Wells Fargo through May 31, 2009 by paying the bank the total amount of $21,677.

e)   The cash collateral aspect of the Motion for Authority to Use Cash Collateral was continued to April 20, 2010 to allow debtors to file their Supplement to the Motion and provide proof of the expenses associated with the maintenance of 15954 Vose.   John Bauer filed a Supplement for the Debtors and made a telephone appearance. Judge Mund authorized the use of $1,479 per month in cash collateral for the upkeep of 15954 Vose St.

f)   On 3/15/10, Wells Fargo Bank filed its Motion for Relief From Stay, with hearing set for April 6, 2010. Debtors filed their Opposition to Wells Fargo's Motion for Relief From Stay. The court considered the motion and the opposition and continued the Motion For Relief to May 11, 2010. When the matter was considered on May 11, 2010, the court continued it to June 8, 2010.

g)   On April 27, 2010, Wells Fargo Bank filed its Objection to Disclosure Statement, then On April 29, 2010, Wells Fargo filed its Amended Objection to Original Disclosure Statement. Debtors filed their Response to Wells Fargo's Objection to Disclosure Statement and filed and served their First Amended Disclosure Statement and their First Amended Plan. At the hearing on adequacy of Disclosure Statement, Judge Mund ruled that the Hart Street loan with Wachovia was subject to strip down and. In her tentative ruling the Judge requested some

changes to the Disclosure Statement and continued the hearing

on adequacy of the Disclosure Statement to allow the debtors

time to file their Second Amended Disclosure Statement.

h) Wells Fargo Bank, and its servicing agent, Select Portfolio

Servicing, Inc. filed a Section 1111(b) election prior to the

conclusion of the May 11, 2010 hearing on adequacy of

Disclosure Statement.

**to Other Legal Proceeding**

The debtors aren't involved in any nonbankruptcy action.

**3.    Actual and Projected Recovery of Preferential or**

**Fraudulent Transfers**

There is no projected recovery for preferential or

fraudulent Transfers.

**4.    Procedures Implemented to Resolve Financial Problems**

To attempt to fix the problems that led to the bankruptcy

filing, and to effectively reorganize their estate, Debtors

have  engaged in the following actions: 1) moved from their

rental to their property at Hart Street to save themselves

$750 per month in rental expense; 2) they have reduced their

monthly expenses for food, clothing, recreation and

transportation expenses in the amount of $585; 3) they have

rented two vacant rooms in their Vose Street home - one for

$500 per month and the other for $515 per month; and 4) they

have changed the gardening service from weekly to two times

per month for a savings of $65 per month.  These changes will enable them to pay the greatest amount possible to their Class #3 unsecured creditors.

**5.   Current and Historical Financial Conditions**

The identity and fair market value of the estate's assets are listed in the debtors' Schedules A, B and C, which are attached hereto as a group as Attachment "2".  The fair market value of 15954 Vose St. is set forth in the appraisal that is part of Exhibit "B". The fair market value of 15811 Hart St. is set forth in the appraisal that is part of Exhibit "B".

**III. SUMMARY OF THE SECOND AMENDED PLAN OF REORGANIZATION**

**A.   What Creditors and Interest Holders Will Receive Under The  Proposed Plan**

As required by the Bankruptcy Code, the Second Amended Plan classifies claims and interests in various classes according to their right to priority. The Second Amended Plan states whether each class of claims or interests is impaired or unimpaired.  The Second Amended Plan provides the treatment each class will receive.

**B.   Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Second Amended Plan because they are automatically entitled to specific treatment

provided for them in the Bankruptcy Code. As such, the
Proponents have <u>not</u> placed the following claims in a class.

## 1.    Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Debtors' Chapter 11 case which are allowed under Code section 507(a)(1).   The Code requires that all administrative claims be paid on the Effective Date of the First Amended Plan, unless a particular claimant agrees to a different treatment.

The following chart lists <u>all</u> of the Debtors' § 507(a)(1) administrative claims and their treatment under the First Amended Plan. (See Exhibit "F" for further information.)

| Name | Amoun | Treatment |
|------|-------|-----------|
| Attorney's Fees Debra Young | | 16,970 on effective date |
| Attorney's Fees John Bauer | | 10,820.75 on Effective Date and |
| | | 4,106.75 in pymts over 60 mos. |
| | | Subtotal 14,927.50 |
| | TOTAL: | **31897** |

The Court must rule on all fees listed in this chart before the fees will be owed. For all fees except Clerk's Office fees and U.S. Trustee's fees, the professional in question must file and serve a fee application and the Court must rule on the application. Only the amount of fees allowed by the Court will be owed and required to be paid under the

page 14

Second Amended Plan.

As indicated above, the Debtors will need to pay $27,790.25 worth of administrative claims on the Effective Date of the Second Amended Plan unless the claimant has agreed to be paid later or the Court has not yet ruled on the claim.  As indicated elsewhere in this Second Amended Disclosure Statement, Debtors will have $46,374.00 of cash on hand on the Effective Date of the Second Amended Plan. The source of this cash will be funds in bank accounts.

**2.   Priority Tax Claims**

The debtors have no priority tax claim obligations.

**C. Classified Claims and Interests**

**1. Classes of Secured Claims**

Secured claims are claims secured by liens on property of the estate. The following chart lists all classes containing Debtors' secured pre-petition claims and their treatment under the Second Amended Plan.  Pursuant to its 1111(b) election, the Class #1 creditor will retain a lien against Vose Street for the full amount of its claim. The Class #2 creditor will retain its lien against Hart Street under the Second Amended Plan. There will be no other modifications of the Class #1 and Class #2 loan obligations other than as is set forth in the Second Amended Plan.

The Class #1 creditor, Wells Fargo, and its servicing

agent, Select Portfolio Services, Inc., made a Section 1111(b) election.  This means that they have given up the right to vote on the plan.  This means that their entire claim is secured, and they have no unsecured claim in Class #3.  The amount of the total secured claim is determined by subtracting the adequate protection payments of $29,677 paid through July 31, 2010, from the Schedule "A" claim amount of $847,243.65, amounting to a secured claim of $817,567. The monthly payment amount is a deferred cash payment derived from adding interest of 4.75% to the present value of the collateral.  The present value of the collateral is the $400,000 appraised value less the adequate protection payments of $29,677 paid through July 31, 2010, or $370,323.  The monthly payments on $370,323 at 4.75%, over 30 years, are $1,932 per month. These calculations are made in accordance with the principals of the case <u>First Federal Bank of California v. Weinstein</u>, 227 B.R. 284, 296 (B.A.P. 9th Cir. 1998). <u>In re Weinstein</u> also provides that interest payments are to be credited against the principal amount of the 1111(b) secured claim.  The case further provides that the balance due may be paid in a balloon payment. Debtors propose to pay a balloon payment of $122,047.

| CLASS #1 | DESCRIPTION | INSIDERS | IMPAIRED | TREATMENT | |
|---|---|---|---|---|---|
| | | **(Y/N)** | **(Y/N)** | | |
| | Secured claim of: | No | Impaired | ● Pymt interval | =mo. |
| | ● Name = Wells Fargo | | | ● Pymt amt/interval | 1,932. |
| | ● Collateral = | | | ● Balloon pymt: $122,047 | 7/1/40 |
| | 15954 Vose St.<br>Los Angeles, CA | | | ●Begin date<br>● End date | 8/1/10<br>7/1/40 |
| | ● Collateral value = | | | ● Interest rate % | 4.75% |
| | $370,323 | | | | |
| | Priority of Sec.= 1st | | | ● Total payout %<br>of secured portion. | 100% |
| | Principal = $817,566.65 | | | | |
| CLASS #2 | Secured claim of: | | | ● Pymt interval | =mo. |
| | ● Name =Wachovia | | | ● Pymt amt/interval | 1,982 |
| | ● Collateral | | | ● Balloon pymt | 0 |
| | 15811 Hart Street<br>Los Angeles, CA | | | ● Begin date | 8/1/10 |
| | ● Collateral value = | | | ● End date | 7/1/40 |
| | $380,000 | | | ● Interest rate % | 4.75% |
| | Priority of Sec.=1st | | | ● Total payout %<br>of secured portion. | 100% |
| | ● Principal =$380,000 | | | | |

## 2.   Classes of Priority Unsecured Claims

Debtors have no Code Section 507(a)(3), (4), (5), (6), and (7) priority unsecured claims.

## 3.   Class of General Unsecured Claims

General unsecured claims are unsecured claims not entitled

to priority under Code Section 507(a).  The following chart
identifies the First Amended Plan's treatment of the class containing
<u>all</u> of Debtors' general unsecured claims (see Exhibit H for detailed
information about each general unsecured claim):

| CLASS #3 | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT | |
|---|---|---|---|---|
| | General unsecured claims:<br><br>Total: 248,072<br><br>(Wachovia – started with 238,580 unsecured – gave credit for $6,022 in principal paid – out of adequate protection payments. Wachovia unsecured is $232,558) | | ● Pymt interval<br>● Pymt amt/interval<br>● Begin date<br>● End date<br>● Interest rate<br>● Total payout   77.7% | = monthly<br>= 3,212.5<br>= 8/1/10<br>= 7/1/15<br>= 0<br>=$192,750 |

| CLASS #4 | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT | |
|---|---|---|---|---|
| | Disputed unsecured claims<br><br>-Nexus Home Solutions<br><br>● Total amt of<br><br>   claims = $25,260 | yes | ● Pymt interval<br>● Pymt amt/interval<br>● Begin date<br>● End date<br>● Interest rate   0%<br>● Total payout   0% | = 0<br>= 0<br>= 0<br>= 0<br>= 0<br>= 0 |

4.    Class(es) of Interest Holders

Interest holders are the parties who hold ownership interests
(i.e., equity interest) in the Debtors.  If the Debtors are a
corporation, entities holding preferred or common stock in the
Debtors are interest holders.  If the Debtors are a
partnership, the interest holders include both general and
limited partners.  Because the Debtors are individuals, the
Debtors are the interest holders.  There will be no payments

to interest holders under the Second Amended Plan.

**D. Means of Effectuating the Second Amended Plan**

**1. Funding for the Second Amended Plan**

The Plan will be funded by the following: funds in bank accounts,$1,400.00 per month in net earnings from the debtors, $3,638 per month in net rents from 15954 Vose St. and $2,160 in net rents from 15811 Hart St.; total funds of $7,198 month.

**2. Post-confirmation Management**

a) Danilo Trinidad will maintain the structures at 15954 Vose Street and 15811 Hart Street.

b) Lydia Trinidad will collect and account for the rents from 15954 Vose St. and 15811 Hart St. She'll pay all of the taxes,utilities, etc., in order to maintain the properties.

**(d)    Description of Expertise**

**3. Disbursing Agent**

Lydia Trinidad shall act as the disbursing agent for the purpose of making all distributions provided for under the Second Amended Plan.   The Disbursing Agent shall serve without bond and shall receive no payment for her services rendered and expenses.

**E. Risk Factors**

The proposed Second Amended Plan has the following risks: The low risk that the income from the debtors' employment and the low risk that the rents may diminish.

F. Other Provisions of the Second Amended Plan

**1. Executory Contracts and Unexpired Leases**

**a. Assumptions**

There are no unexpired leases to be assumed. The executory contracts to be assumed are described at Exhibit "D".
On the Effective Date, each of the unexpired leases and executory contracts listed above shall be assumed as obligations of the reorganized Debtor.  The Order of the Court confirming the Plan shall constitute an Order approving the assumption of each executory contract listed above.  If you are a party to an executory contract to be assumed and you object to the assumption of your contract, you must file and serve your objection to the Second Amended Plan within the deadline for objecting to the confirmation of the Second Amended Plan. See Section {I.B.3.} of this document for the specific date.

**b.     Rejections**

On the Effective Date, no executory contracts or unexpired leases will be rejected:

**2. Changes in Rates Subject to Regulatory Commission Approval**

This Debtor is not subject to governmental regulatory commission approval of its rates.

**3. Retention of Jurisdiction.**

The Court will retain jurisdiction to the extent provided

1  by law.

2  **G. Tax Consequences of Second Amended Plan**

3  CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE

4  SECOND AMENDED PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD

5  CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR

6  ADVISORS. The following disclosure of possible tax

7  consequences is intended solely for the purpose of alerting

8  readers about possible tax issues this Second Amended Plan may

9

10  present to the Debtors.  The Proponents CANNOT and DO NOT

11  represent that the tax consequences contained below are the

12  only tax consequences of the Plan because the Tax Code

13  embodies many complicated rules which make it difficult to

14  state completely and accurately all the tax implications of

15  any action.

16

17  The following are the tax consequences which the Second

18  Amended Plan will have on the Debtors' tax liability: Their

19  real property taxes may decrease if the tax assessor can

20  decides to use the values for 15954 Vose Street and

21  15811 Hart Street that are in this Second Amended Disclosure

22  Statement, the appraisals and the Second Amended Plan.

23

                                    **IV.**

24

                  **CONFIRMATION REQUIREMENTS AND PROCEDURES**

25

26  PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THIS

27  SECOND AMENDED PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS

28                              page 21

BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. The proponents CANNOT and DO NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan.  Some of the requirements include that the  Second Amended Plan must be proposed in good faith, acceptance of the Second Amended Plan, whether the Second Amended Plan pays creditors at least as much as they would receive in a Chapter 7 liquidation, and whether the Second Amended Plan is feasible.  These requirements are not the only requirements for confirmation.

**A. Who May Vote or Object**

**1. Who May Object to Confirmation of the Second Amended Plan**

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

**2. Who May Vote to Accept/Reject the Second Amended Plan**

Class #1 creditor, Wells Fargo, and its servicing agent, Select Portfolio Services, Inc., may not vote because Class #1 has made a Section 1111(b) election.

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

**a. What Is an Allowed Claim/Interest**

As noted above, a creditor or interest holder must first have an <u>allowed claim or interest</u> to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim. When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE WAS March 22, 2010. A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed. A claim is deemed allowed if (1) it is scheduled on the Debtors' schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest. Consult Exhibits F through L to see how the Proponent has characterized your claim or interest.

**b.   What Is an Impaired Claim/Interest**

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is <u>impaired</u> under the First Amended Plan. A class is impaired if the First Amended Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general unsecured claims is impaired if the Second Amended Plan fails to pay the members of that class 100% of what they are owed.

In this case, the Proponents believes that classes #2, #3 and #4 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Second Amended Plan (with the exception of Class #4 which receives zero under the Second Amended Plan and is deemed to have rejected the Plan). The Proponents believe that no classes are unimpaired. Parties who dispute the Proponents' characterization of their claim or interest as being impaired or unimpaired may file an objection to the Second Amended Plan contending that the Proponents have incorrectly characterized the class.

**3.   Who is <u>Not</u> Entitled to Vote**

The following four types of claims are <u>not</u> entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant

to Code sections 507(a)(1), (a)(2), and (a)(8); and (4) claims

in classes that do not receive or retain any value under the

Second Amended Plan. Claims in unimpaired classes are not

entitled to vote because such classes are deemed to have

accepted the Second Amended Plan. Claims entitled to priority

pursuant to Code sections 507(a)(1), (a)(2), and (a)(7) are

not entitled to vote because such claims are not placed in

classes and they are required to receive certain treatment

specified by the Code. Claims in classes that do not receive

or retain any value under the Second Amended Plan do not vote

because such classes are deemed to have rejected the Plan.

EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY

STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE

SECOND AMENDED PLAN.

**4.   Who Can Vote in More Than One Class**

A creditor whose claim has been allowed in part as a

secured claim and in part as an unsecured claim is entitled to

accept or reject the Second Amended Plan in both capacities by

casting one ballot for the secured claim and one for the

unsecured claim.

**5. Votes Necessary to Confirm the Second Amended Plan**

If impaired classes exist, the Court cannot confirm the

Second Amended Plan unless (1) at least one impaired class has

accepted the Plan without counting the votes of any insiders

within that class, and (2) all impaired classes have voted to accept the Second Amended Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed in Section {IV.A.8.}.

## 6. Votes Necessary for a Class to Accept the Second Amended Plan

A class of claims is considered to have accepted the Second Amended Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in favor of the Second Amended Plan. A class of interests is considered to have accepted the Second Amended Plan when at least two-thirds (2/3) in amount of the interest-holders of such class which actually voted, voted to accept the Second Amended Plan.

## 7. Treatment of Nonaccepting Classes

As noted above, even if <u>all</u> impaired classes do not accept the proposed Second Amended Plan, the Court may nonetheless confirm the Second Amended Plan if the nonaccepting classes are treated in the manner required by the Code. The process by which nonaccepting classes are forced to be bound by the terms of the First Amended Plan is commonly referred to as "cramdown." The Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting

requirements of 1129(a)(8) and the Second Amended Plan does

not "discriminate unfairly" and is "fair and equitable" toward

each impaired class that has not voted to accept the Second

Amended Plan as referred to in 11 U.S.C. § 1129(b) and

applicable case law.

8.    **Request for Confirmation Despite Nonacceptance by Impaired Class(es)**

The parties proposing this Plan will ask the Court to

confirm this Plan by cramdown on impaired classes #2, #3 and

#4 if any of these classes do not vote to accept the Plan.

Class #1 cannot be crammed down, but classes #2, #3 and #4 can

be crammed down.

**B. Liquidation Analysis**

Another confirmation requirement is the "Best Interest

Test", which requires a liquidation analysis.  Under the Best

Interest Test, if a claimant is in an impaired class and that

claimant does not vote to accept the Second Amended Plan, then

that claimant must receive or retain under the Second Amended

Plan property of a value not less than the amount that such

holder would receive or retain if the Debtors were liquidated

under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtors' assets are usually sold

by a Chapter 7 trustee. Secured creditors are paid first from

the sales proceeds of properties on which the secured creditor

1  has a lien.  Administrative claims are paid next.  Next,

2  unsecured creditors are paid from any remaining sales

3  proceeds,according to their rights to priority.  Unsecured

4  creditors with the same priority share in proportion to the

5  amount of their allowed claim in relationship to the amount of

6  total allowed unsecured claims. Finally, interest holders

7  receive the balance that remains after all creditors are paid,

8  if any.

9

10  For the Court to be able to confirm this Second Amended

11  Plan, the Court must find that all creditors and interest

12  holders who do not accept the Second Amended Plan will receive

13  at least as much under the Plan as such holders would receive

14  under a Chapter 7 liquidation. The Second Amended Plan

15  Proponents maintain that this requirement is met here for the

16  following reasons:

17

18  a) Pursuant to the Order to Pay Adequate Protection on

19  April 6, 2010, debtors' will have paid post-petition adequate

20  protection payments to Wells Fargo for the period from

21  12/18/09 through 7/31/10, in the amount of $4,000 per month,

22  for a total sum of $33,677.00.  In their Second Amended

23  Disclosure Statement and Second Amended Plan, the debtors

24  propose to repay the secured portion of the Wells Fargo loan,

25  in the amount of $366,323, at 4.75% interest, over 30 years,

26  in equal monthly payments of $1,911.00.

27

28  page 28

b) Debtors will have paid adequate protection payments to Wachovia, which Wachovia agreed to, of $2,730.76 per month from 12/18/10 to July 31, 2010 in the total amount of $17,210.74.

c) The debtors propose to repay the secured portion of the Wachovia loan from the effective date, in the amount of $380,000, with interest at 4.75%, over 30 years, in equal monthly payments of $1,982.00.

d) After payment of $4,106.75, which is the balance of attorney's fees payable to John Bauer in monthly installments of $68.45 per month over 60 months, the debtors will have $3,212.50 per month of disposable income to pay the unsecured class 77.7% of their claims, by paying a total of $3,212.50 per month to this Class #3 over 5 years.  The unsecured class includes the unsecured portion of the Wachovia loan on 15811 Hart St., in the amount of $232,558.00 - Wachovia's 77.7% payment in the unsecured class will equal $3,011.63 per month, for a total payment over 5 years of $180,697.60.

Below is a demonstration, that all creditors will receive at least as much under the Second Amended Plan as such creditor would receive under a Chapter 7.  See Exhibit E for a detailed explanation of how the following assets are valued. This information is provided from Debtors' Schedules A, B, D and F and their DIP account.

Page 29

**ASSETS - LIQUIDATION VALUES:**

CURRENT ASSETS
| | |
|---|---|
| a. Cash on hand | $18,588 |
| b. Accounts receivable | $ 0 |
| c. Savings bonds left after payment of adequate protection through to Wachovia through 7/31/10: | $ 9,268 |
| e.    Exempt IRAs | $30,848 |
| | |
| TOTAL CURRENT ASSETS | $58,704 |

FIXED ASSETS
| | |
|---|---|
| a.    Office furniture & equipment | $ 500 |
| b.    Machinery & equipment | $ 0 |
| c.    Automobiles | $ 7,500 |
| d.    Building & Land | $780,00 |
| | |
| TOTAL FIXED ASSETS | $788,00 |

OTHER ASSETS
| | |
|---|---|
| a.    Customer list | $ 0 |
| b.    Other intangibles | $ 0 |
| | |
| TOTAL OTHER ASSETS | $ 0 |

**TOTAL ASSETS AT LIQUIDATION VALUE**          $846,704
                                              =========

**Less:**
Secured creditor's recovery (net after
trustee fees and administrative expenses)     $1,193,566
**Less:**
Chapter 7 trustee fees and expenses (at
5% of funds to be distributed)                $ 39,000
**Less:**
Chapter 11 administrative expenses            $ 31,897
**Less:**
Priority claims,excluding administrative
expense claims                                $ 0
**Less:**
Debtor's claimed exemptions                   $30,848
                                              =========
(1) Balance for unsecured claims              $ 0

(2) Total amt of unsecured claims             $248,072

**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WOULD RECEIVE OR RETAIN IN A CH. 7 LIQUIDATION: = ___0%___**

**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WILL RECEIVE OR RETAIN UNDER THIS SECOND AMENDED PLAN: = ___77.7%___**

Below is a demonstration, in tabular format, that all creditors and interest holders will receive at least as much under the Second Amended Plan as such creditor or holder would receive under a Chapter 7 liquidation.

| CLAIMS & CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION |
|---|---|---|
| Administrative Claims | 100 percent | 100 percent |
| Priority Tax Claims | 0 | 0 |
| Class 1 – Vose St. | 100 percent | 100 percent |
| Class 2 – Hart St. | 100 percent | 100 percent |
| Class 3 - unsecured | 77.7 percent | 0 percent |
| Class 4 | 0 percent | 0 percent |

## C. Feasibility

Another requirement for confirmation involves the feasibility of the Second Amended Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtor under the Second Amended Plan, unless such liquidation or reorganization is proposed in the Second Amended Plan.

There are at least two important aspects of a feasibility

analysis. The first aspect considers whether the Debtors will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date.   The Second Amended Plan Proponents maintain that this aspect of feasibility is satisfied as shown here:

| | |
|---|---|
| Cash Debtor will have on hand by Effective Date | $47,374 |
| **To Pay:** Adequate Protection to Wells Fargo on 7/1/30/Per Court Order | -4,000 |
| **To Pay:** Administrative claims | -27,790 |
| **To Pay:** Statutory costs & charges | |
| **To Pay:** Other Plan Payments due on Effective Date - Trustee's Quarterly Fee | - 0 |
| | - 650 |
| Balance after paying these amounts............... | $14,934 |

The sources of the cash Debtor will have on hand by the Effective  Date, as shown above are:

| | |
|---|---|
| $18,589.00 | Cash in DIP Account now |
| $20,686.00 | Additional cash DIP will accumulate from net earnings & rents from now to Effective Date |
| $0.00 | Borrowing |
| $8,099.00 | Capital Contributions - bonds |
| $0.00 | Other |
| $47,374.00 | **Total** |

The debtors do not contemplate borrowing at this time. The second aspect considers whether the Proponents will have enough cash over the life of the Second Amended Plan to make the required payments.

The Proponents have provided financial statements which include both historical and projected financial information. Please refer to Exhibit B for the relevant financial statements.

YOU ARE ADVISED TO CONSULT WITH YOUR FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE  STATEMENTS.

In summary, the Plan proposes to pay $7,198.00 each month to Class #1, Class #2, members of Class #3, attorney John Bauer, and to the U.S. Trustee. As Debtors' financial projections demonstrate, Debtors will have an average cash flow, after paying operating expenses and post-confirmation taxes, of $7,198.00 each month for the life of the Plan.  The final payments under the Second Amended Plan are expected to be paid on 7/1/40. The Second Amended Plan Proponents contend that Debtors' financial projections are feasible.  As shown by Debtors' historical financial statements, Debtors' average monthly cash flow, after paying operating expenses and post-confirmation taxes, in the three years preceding the filing of this bankruptcy case was $7,223.00.  Debtors' average monthly cash flow, after paying operating expenses and post-

confirmation taxes, during this case, since they implemented

procedures to increase their net income in March 2010, is

$7,198.00.

## V.

### EFFECT OF CONFIRMATION OF PLAN

#### A. Discharge

This Second Amended Plan provides that upon payment in full

of proposed plan payments to the unsecured creditors, Debtors

shall be discharged of liability for payment of debts incurred

before confirmation of the Plan, to the extent specified in

11 U.S.C.§1141.  However, the discharge will not discharge any

liability imposed by the Second Amended Plan.

#### B. Class #1 Section 1111(b) Lien

Upon confirmation of the plan, Class #1 has a lien against

the Vose Street property for $813,566.65.  Both principal and

interest payments made by debtors during the course of the

plan shall be applied to reduce the principal amount of the

lien.  Upon sale of the property, the Class #1 creditor's lien

shall be equal to the value of the property upon sale (not to

exceed $813,566.65), less credit for principal and interest

payments made by debtors.

#### C. Revesting of Property in the Debtor

Except as provided in Section {V.E.}, and except as

provided elsewhere in the Second Amended Plan, the

confirmation of the Second Amended Plan revests all of the

property of the estate in the Debtors.

## C. Modification of Plan

The Proponents of the Second Amended Plan may modify the

Second Amended Plan at any time before confirmation.  However,

the Court may require a new disclosure statement and/or

revoting on the Amended Plan.

The Proponents of the Second Amended Plan may also seek to

modify the Second Amended Plan at any time after confirmation

only if (1) the Second Amended Plan has not been substantially

consummated and (2) the Court authorizes the proposed

modifications after notice and a hearing.

## D. Post-Confirmation Status Report

Within 120 days of the entry of the order confirming the

Second Amended Plan, the Proponents shall file a status report

with the Court explaining what progress has been made toward

consummation of the confirmed Second Amended Plan.  The status

report shall be served on the United States Trustee, the

twenty largest unsecured creditors, and those parties who have

requested special notice. Further status reports shall be

filed every 120 days and served on the same entities.

## E. Quarterly Fees

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to

date of confirmation shall be paid to the United States

Trustee on or before the effective date of the Second Amended

Plan.  Quarterly fees accruing under 28 U.S.C. § 1930(a)(6)

after confirmation shall be paid to the United States Trustee

in accordance with 28 U.S.C. § 1930(a)(6) until entry of a

final decree, or entry of an order of dismissal or conversion

to chapter 7.

**F. Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to

convert or dismiss the case under § 1112(b), after the Second

Amended Plan is confirmed, if there is a default in performing

the Second Amended Plan.  If the Court orders the case

converted to Chapter 7 after the Plan is confirmed, then all

property that had been property of the Chapter 11 estate, and

that hasn't been disbursed pursuant to the Second Amended

Plan, will revest in the Chapter 7 estate. The automatic stay

will be reimposed upon the revested property, but only to the

extent that relief from stay was not previously authorized by

the Court during this case.

The order confirming the Second Amended Plan may also be

revoked under very limited circumstances. The Court may revoke

the order if the order of confirmation was procured by fraud

and if the party in interest brings an adversary proceeding to

revoke confirmation within 180 days after the entry of the

order of confirmation.

## G. Final Decree

Once the estate has been fully administered per Bankruptcy Rule 3022, the Proponents, or other party as the Court shall designate in the Second Amended Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.

Name of Plan Proponents:

Date: 5/27/10                              _____
                                          Danilo Trinidad

Date: 5/27/10                             _____
                                          Lydia Trinidad


Attorneys for Plan Proponents      John H. Bauer and Debra C. Young


Date: 5/27/10                             _____
                                          By: Debra C. Young

# ATTACHMENT "1"

In Re: _Danilo S & Lydia F. _____        1:09-bk-27152
                          Debtor                          (if known)

# SCHEDULE I - CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

The column labeled "Spouse" must be completed in all cases filed by joint debtors and by a married debtor, whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. Do not state the name of any minor child. The average monthly income calculated on this form may differ from the current monthly income calculated on Form 22A, 22B, or 22C.

| Debtor's Marital Status: MARRIED | DEPENDENTS OF DEBTOR AND SPOUSE | | |
|---|---|---|---|
| | RELATIONSHIP | Daughter | AGE 24 |
| | | Daughter | 20 |
| | | Son | 12 |

| Employment: | DEBTOR | SPOUSE |
|---|---|---|
| Occupation | Handyman | Autocad Drafter |
| Name of Employer | N/A | Arthur Bannick Architect |
| How Long Employed | N/A | 3 years, 11 months |
| Address of Employer | N/A | 7141 Valjean Ave<br>Van Nuys, CA 91406 |

**Income:** (Estimate of average monthly income)

| | | DEBTOR | | SPOUSE |
|---|---|---|---|---|
| 1. Current monthly gross wages, salary, and commissions (Prorate if not paid monthly.) | $ | 500.00 | $ | 3,886.00 |
| 2. Estimated monthly overtime | $ | | $ | |
| 3. SUBTOTAL | $ | 500.00 | $ | 3,886.00 |
| 4. LESS PAYROLL DEDUCTIONS | | | | |
| a. Payroll taxes and social security | $ | | $ | |
| b. Insurance | $ | | $ | 684.02 |
| c. Union dues | $ | | $ | 168.00 |
| d. Other (Specify): | $ | | $ | |
| 5. SUBTOTAL OF PAYROLL DEDUCTIONS | $ | 0.00 | $ | 852.02 |
| 6. TOTAL NET MONTHLY TAKE HOME PAY | $ | 500.00 | $ | 3,033.98 |
| 7. Regular income from operation of business or profession or firm (Attach detailed statement) | $ | | $ | 7,900.00 |
| 8. Income from real property | $ | | $ | |
| 9. Interest and dividends | $ | | $ | |
| 10. Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above | $ | | $ | |
| 11. Social security or other government assistance (Specify): | $ | | $ | |
| 12. Pension or retirement income | $ | | $ | |
| 13. Other monthly income Specify: | $ | | $ | |
| 14. SUBTOTAL OF LINES 7 THROUGH 13 | $ | 0.00 | $ | 7,900.00 |
| 15. TOTAL MONTHLY INCOME (Add amounts shown on lines 6 and 14) | $ | 500.00 | $ | 10,933.98 |
| 16. TOTAL COMBINED MONTHLY INCOME $ 11,433.98 | | | | |

17. Describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document:

Increase in income from real property

In Re: _____     1:09-bk-27152
       Danilo S & Lydia F Tamayo
             Debtor
                                                 (if known)

# SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)

Complete this schedule by estimating the average monthly expenses of the debtor and the debtor's family. Pro rate any payments made bi-weekly, quarterly, semi-annually, or annually to show monthly rate. The average monthly expenses calculated on this form may differ from the deductions from income allowed on Form 22A or 22C

☐ Check this box if a joint petition is filed and debtor's spouse maintains a separate household. Complete a separate schedule of expenditures labeled "Spouse".

| | | |
|---|---|---|
| 1. Rent or home mortgage payment (include lot rented for mobile home) | $ | 9254.58 |
|    a. Are real estate taxes included?  ☒ Yes  ☐ No | | |
|    b. Is property insurance included?  ☒ Yes  ☐ No | | |
| 2. Utilities: a. Electricity and heating fuel | $ | 1148.68 |
|    b. Water and sewer | $ | |
|    c. Telephone | $ | 165.00 |
|    d. Other | $ | |
| 3. Home maintenance (repairs and upkeep) | $ | |
| 4. Food | $ | 700.00 |
| 5. Clothing | $ | 230.00 |
| 6. Laundry and dry cleaning | $ | 50.00 |
| 7. Medical and dental expenses | $ | 180.00 |
| 8. Transportation (not including car payments) | $ | 400.00 |
| 9. Recreation, clubs and entertainment, newspapers, magazines | $ | 642.81 |
| 10. Charitable contributions | $ | 50.00 |
| 11. Insurance (not deducted from wages or included in home mortgage payments) | | |
|    a. Homeowner's or renters | $ | |
|    b. Life | $ | 217.07 |
|    c. Health | $ | 167.00 |
|    d. Auto | $ | 18.00 |
|    e. Other | $ | 200.00 |
| 12. Taxes (not deducted from wages or included in home mortgage payments) | $ | 1101.75 |
|    Specify: | | |
|    Property Taxes | | |
| 13. Installment payments: (In chapter 11, 12 or 13 cases, do not list payments to be included in the plan) | | |
|    a. Auto | $ | |
|    b. Other | $ | |
|    c. Other | $ | |
| 14. Alimony, maintenance, and support paid to others | $ | |
| 15. Payments for support of additional dependents not living at your home | $ | |
| 16. Regular expenses from operation of business, profession, or farm (attach detailed statement) | $ | 805.73 |
| 17. Other Education | $ | 230.00 |
| 18. AVERAGE MONTHLY EXPENSES (Total lines 1-17) | $ | 15,560.62 |

19. Describe any increase or decrease in expenditures reasonably anticipated to occur within the year following the filing of this document:

20. STATEMENT OF MONTHLY NET INCOME

| | | |
|---|---|---|
| a. Average monthly income from Line 15 of Schedule I | $ | 11,433.98 |
| b. Average monthly expenses from Line 18 above | $ | 15,660.62 |
| c. Monthly net income (a. minus b.) | $ | -4,226.64 |

# ATTACHMENT "2"

Case 1:09-bk-27152-GM   Doc 70   Filed 02/11/10   Entered 02/11/10 11:11:57   Desc
Main Document   Page 4 of 1

In Re: _____ Danilo S & Lydia _____        1:09-bk-27152
      **Debtor**                                                    (if known)

# AMENDED
## SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a co-tenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, or both own the property by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint or Community". If the debtor holds no interest in real property, write "None" under "Description and Location of Property".

Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim".

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property Without Deducting Any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| Rental Property<br>15811 Hart Street<br>Van Nuys, CA 91406 | Equitable interest | | $380,000.00 | $618,580.24 |
| Rental Property<br>15954 Vose Street<br>Van Nuys, CA 91406 | Equitable interest | | $400,000.00 | $847,243.65 |
| | | Total | $780,000.00 | |

In Re: _____ Danilo S & Lydia F Trinidad _____     1:09-bk-27152
                        Debtor                                          (if known)

# AMENDED
## SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "X" in the appropriate position in the column labeled "None". If additional space is needed in any category, attach a separate sheet properly identified with the same case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, or both own the property by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community". If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state the person's name and address under "Description and Location of Property".
If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. § 112 and Fed. R. Bankr. P. 1007(m).

| Type of Property | None | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property Without Deducting Any Secured Claim or Exemption |
|---|---|---|---|---|
| 1. Cash on hand. | | Cash | | $200.00 |
| 2. Checking, savings or other financial accounts, CD's, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses or cooperatives. | | Checking ($2,184.15)<br>Savings ($491.58)<br>Checking ($2094.30)<br>NOTE: All Bank Accounts were closed on 01/21/2010 | | $4,770.03 |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. Household goods and furnishings, including audio, video, and computer equipment. | | Living room sofa, coffee table, kitchen table with 4 chairs, 4 tv's, freezer, refrigerator, washer and dryer, stove, bed, printer and computer | | $1,200.00 |

In Re: _____ Danilo S & Lydia F Trinidad _____                                                    1:09-bk-27152

| Type of Property | None | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property Without Deducting Any Secured Claim or Exemption |
|---|---|---|---|---|
| 5.  Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | | Books at residence | | $200.00 |
| 6.  Wearing apparel. | | Misc. clothing at residence | | $200.00 |
| 7.  Furs and jewelry. | | Wedding ring, watch, necklace | | $4,000.00 |
| 8.  Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9.  Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | | Life Insurance: Old Line Life<br>Life Insurance: WRL<br>Life Insurance: Old Line Life<br>Life Insurance: AIG<br>Life InsuranceWRL (All are Term Only) | | $0.00 |
| 10. Annuities. Itemize and name each issuer. | X | | | |
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. | X | | | |
| 12. Interest in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | | IRA/Allianz ($20,076.00)<br>IRA/Allianz ($5,393.50)<br>IRA/Allianz ($5,379.68)<br>PO BOX 360259<br>Pittsburg, PA  15250-6259 | | $30,848.18 |

Case 1:09-bk-27152-GM   Doc 85   Filed 05/28/10   Entered 05/28/10 14:20:54   Desc
Case 1:09-bk-27152-GM   Doc 23   Filed 02/11/10   Entered 02/11/10 11:11:57   Desc
Main Document   Page 46 of 52   Page 3 of 14

In Re:   Danilo S & Lydia F Trinidad                                    1:09-bk-27152

| Type of Property | None | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property Without Deducting Any Secured Claim or Exemption |
|---|---|---|---|---|
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and non-negotiable instruments. | | Savings bonds Chase Bank 6300 Van Nuys Blvd Van Nuys, CA 91401 | | $26,600.00 |
| 16. Accounts receivable. | X | | | |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owing debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interest, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in real estate of a decedent, death benefit plan, life insurance policy, or trust. | | Life Insurance- Reliance Life Insurance | | $0.00 |

Case 1:09-bk-27152-GM   Doc 85   Filed 05/28/10   Entered 05/28/10 14:20:54   Desc
Case 1:09-bk-27152-GM   Main Document   Filed 02/Page047Entered 02/11/10 11:11:57   Desc
In Re:          Danilo S & Lydia F Trinidad   Main Document     Page 8 of 14          1:09-bk-27152
Debtor                                                    (if known)

| Type of Property | None | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property Without Deducting Any Secured Claim or Exemption |
|---|---|---|---|---|
| 21. Other contingent or unliquidated claims of every nature, including tax refunds, counter-claims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |
| 22. Patents, copyrights, and other intellectual property.  Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles.  Give particulars. | X | | | |
| 24. Customer lists or other compilations contain-ing personally identifiable information provided to the debtor by individuals in connection with obtaining a product or service from the debtor pri-marily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | 2002 BMW 3 series 1988 Celica GT 1993 Toyota Truck | | $7,500.00 |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | X | | | |

In Re:                          Danilo S & Lydia F Trinidad                                                    1:09-bk-27152
**Debtor**                                                                                                   (if known)

| Type of Property | None | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property Without Deducting Any Secured Claim or Exemption |
|---|---|---|---|---|
| 29. Machinery, fixtures, equipment, and supplies used in business. | | Metal Bending Machine ($500.00) Tools ($500.00) | | $1,000.00 |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |
| | | | Total | $76,518.21 |

In Re: _____ Danilo S & Lydia F Trinidad __Main Document____   Page 13 of 48   1:09-bk-27152
Debtor
(if known)

# SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor claims the exemptions to which debtor is entitled under:
(Check one box)

☐ Check if debtor claims a homestead exemption that exceeds $136,875.

☐ 11 U.S.C. § 522(b)(2)
☒ 11 U.S.C. § 522(b)(3)

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| Checking ($2,160.00)<br>Savings ($493.00)<br>Paypal ($620.00) | 704.070 | $2,880.00 | $3,274.00 |
| Living room sofa, coffee table, kitchen table with 4 chairs, 4 tv's, freezer, refrigerator, washer and dryer, stove, bed, printer and computer | 704.020 | $1,200.00 | $1,000.00 |
| Misc. clothing at residence | 704.020 | $1,200.00 | $200.00 |
| Wedding ring, watch, necklace | 704.040 | $4,000.00 | $4,000.00 |
| IRA/Allianz ($20,076.00)<br>IRA/Allianz ($5,393.50)<br>IRA/Allianz ($5,379.68)<br>PO BOX 360259<br>Pittsburg, PA  15250-6259 | 704.115 | $30,848.18 | $30,848.18 |

# EXHIBIT "A"

## EXHIBIT A - LIST OF ALL ASSETS

1.   15954 Vose St., Los Angeles -  residential real property

Collateral value = $400,000 - valued by sales approach

Appraisal by Bill Martin - qualifications set forth in
Application to Employ Appraiser Martin which was filed with
the court and served on all creditors.


2.   15811 Hart St., Los Angeles -  residential real property

Collateral value = $380,000 -  valued by sales approach

Appraisal by Bill Martin - qualifications described in the
Application to Employ Appraiser Martin which was filed with
the court and served on all creditors.

# EXHIBIT "B"