Ja Vonne M. Phillips, Esq. SBN 187474
Gregory J. Babcock, Esq. SBN 260437
**McCarthy & Holthus, LLP**
1770 Fourth Avenue
San Diego, CA 92101
Phone (619) 685-4800
Fax (619) 685-4810

Attorney for: Secured Creditor,
Wells Fargo Bank, National Association, as trustee for the holders of the First Franklin Mortgage Loan Trust 2006-FF15 Mortgage Pass-Through Certificates, Series 2006-FF15, it assignees and/or successors, and the servicing agent Select Portfolio Servicing, Inc.

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re: | ) Case No. 1:09-bk-27152-GM |
| | ) |
| Danilo Solis Trinidad, | ) Chapter 11 |
| | ) |
| Lydia Flores Trinidad, | ) |
| | ) **OBJECTION TO DEBTORS' AMENDED** |
| | ) **CHAPTER 11 PLAN [SECOND]** |
| Debtors. | ) |
| | ) Date: 8/31/2010 |
| | ) Time: 10:00 AM |
| | ) Ctrm: 302; 3rd Floor |
| | ) Place: 21041 Burbank Boulevard, |
| | )          Woodland Hills, CA |

Wells Fargo Bank, National Association, as trustee for the holders of the First Franklin Mortgage Loan Trust 2006-FF15 Mortgage Pass-Through Certificates, Series 2006-FF15, it assignees and/or successors, and the servicing agent Select Portfolio Servicing, Inc. ("Secured Creditor") respectfully submits the following objections to the confirmation of the Debtors' Amended Chapter 11 Plan [Second]  ("Plan") submitted by debtors Danilo Solis Trinidad and Lydia Flores Trinidad ("Debtors").

## I. INTRODUCTION

Secured Creditor holds the first lien on the real property generally described as 15954 Vose Street, Van Nuys, CA 91406 ("Vose Street"), which the Debtors propose to retain under the Plan.

Secured Creditor's lien on Vose Street secures repayment of the obligations evidenced by a Fixed Rate Promissory Note dated August 21, 2006 in the original principal amount of $770,000.00.  On February 2, 2010, Secured Creditor filed Proof of Claim number 2, with the secured claim amount of $855,082.60.

Under the Plan, Secured Creditor is classified as holding an impaired claim in Class 1. The Debtors propose the following Plan treatment for Secured Creditor's claim:

| | |
|---|---|
| Collateral Value: | $370,323 |
| Principal Owed: | $817,566.65 |
| Payment Amount: | $1,932.00 |
| Interval: | Monthly |
| Balloon Payment: | $122,047 |
| Begin Date: | 8/1/2010 |
| End Date: | 7/1/2010 |
| Interest Rate: | 4.75% |

## II. OBJECTIONS

A plan of reorganization cannot be confirmed unless all of the requirements in 11 U.S.C. § 1129 are satisfied.  "The bankruptcy court ha[s] an affirmative duty to ensure that the Plan satisfie[s] all 11 U.S.C. § 1129 requirements for confirmation."  In re Ambanc La Mesa Limited Partnership, 115 F.3d 650, 653 (9th Cir. 1997).  The debtor must prove "by a preponderance of the evidence either (1) the Plan satisfies all thirteen requirements of 11 U.S.C. § 1129(a), or (2) if the *only* condition not satisfied is the eighth requirement, 11 U.S.C. § 1129(a)(8), the Plan

satisfies the 'cramdown' alternative to this condition found in 11 U.S.C. 1129(b), which requires that the Plan 'does not discriminate unfairly' against and is 'fair and equitable towards each impaired class that has not accepted the Plan." Id. (emphasis added) (citing In re Arnold and Baker Farms, 177 B.R. 648, 654 (9th Cir. BAP 1994) ("The debtor carries the burden of proving that a Chapter 11 plan complies with the statutory requirements for confirmation under §§ 1129(a) & (b).")).

Here, the Debtors have presented **no** evidence that its Plan meets the requirements of 11 U.S.C. §§ 1129(a) or (b). The Debtors have not submitted any declarations or other evidence to support any of the factual assertions in the Plan or the Second Amended Disclosure Statement ("Disclosure Statement"). In particular, the Debtors have presented no evidence to prove that the Plan's treatment of Secured Creditor's claim in Class 1 conforms with Secured Creditor's 1111(b) Election (defined below); that the Plan is feasible under 11 U.S.C. § 1129(a)(11); or how the Plan is "fair and equitable" pursuant to 11 U.S.C. § 1129(b) (since Secured Creditor, an impaired class, has not accepted the Plan).

Thus, this Plan cannot be confirmed as it (i) fails to comply with the applicable provisions of Title 11 as required by 11 U.S.C. § 1129(a)(1); (ii) is not feasible as required by 11 U.S.C. § 1129(a)(11); and (iii) is not fair and equitable as required by 11 U.S.C. § 1129(b)(2).

**1. THE PLAN FAILS TO COMPLY THE APPLICABLE PROVISIONS OF TITLE 11 AS REQUIRED BY 11 U.S.C. § 1129 (a)(1)**

11 U.S.C. § 1129 (a)(1) of the Bankruptcy Code requires that a court only confirm a plan if "[t]he plan complies with the applicable provisions of this title." The Plan fails to comply with Secured Creditor's 1111(b) Election, as well as 11 U.S.C. § 1141(d)(5).

Secured Creditor filed an election for treatment of its secured claim under 11 U.S.C. § 1111(b) on 05/10/2010, found at Docket 78 (the "1111(b) Election"). Debtors' proposed treatment of Secured Creditor's claim in Class 1 fails to properly provide for payments in compliance with the 1111(b) Election, and thus the Plan is unconfirmable.

The Plan also violates 11 U.S.C. § 1141(d)(5), which governs the discharge of individual Chapter 11 debtors, and thus Debtors' own discharge. The Debtors, in Section IV(A) of the Plan, provide a murky explanation of the "Effect of Confirmation of Plan" as to "Discharge":

"This Second Amended Plan provides that upon payment in full of proposed plan payments to the unsecured creditors, Debtor shall be discharged of liability for payment of debts incurred before confirmation of this Second Amended Plan, to the extent specified in 11 U.S.C. § 1141." See Plan pg. 10, lines 8-13. This is an inaccurate and confusing account of the requirements which must be met by the Debtors to obtain a discharge of their pre-confirmation debts under 11 U.S.C. § 1141(d)(5), and thus the Plan in unconfirmable.

### 2. THE PLAN IS NOT FEASIBLE UNDER 11 U.S.C. § 1129(A)(11)

The Bankruptcy Code requires that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). To satisfy the feasibility requirement, the Debtors must "demonstrate that the plan has a 'reasonable probability of success.'" In re Wiersma, 324 B.R. 92, 112-113 (9th Cir. BAP 2005) (citing In re Acequia, Inc., 787 F.2d 1352, 1364 (9th Cir. 1986)). "The proposed plan must not be a visionary scheme which promises more than the debtor can deliver." Id.

To demonstrate feasibility, the Debtors must show by concrete evidence that it will have sufficient cash flow to fund the plan and maintain the operations proposed in it. Moreover, the Debtors must demonstrate an adequate means of implantation. In this case, the Debtors state that the Plan's funding will comprise of: (i) rental income from Vose Street and the Debtors' other real property asset generally known as 15811 Hart Street, Los Angeles, CA ("Hart Street") (collectively, the "Properties") and (ii) salaries of the Debtors.

As a threshold matter, the Debtors have provided no evidence to demonstrate feasibility of the Plan, and thus such a determination cannot be made. However, leaving aside the Debtors' lack of any evidence in support of a finding of feasibility, Secured Creditor has attempted to determine on its own whether the Plan is feasible.

### A. The Plan is Not Feasible.

Nevertheless, assuming all of the facts – and projections – in the Plan and the Disclosure Statement are accurate and reliable, AND adopting the current impermissible plan treatment

proposed by the Debtors as to Secured Creditor's claim (and solely for this exercise in determining the Plan feasibility), the Plan is not feasible. Secured Creditors wishes to note to the Court that as the Debtors have failed to file Monthly Operating Reports for May, June, or July of 2010, it is impossible for Secured Creditor to attempt to verify any of the projections provided for in the Plan and Disclosure Statement, as both were filed on May 28, 2010, at docket numbers 84 and 85, respectively.

### a. Projected Income

The Plan projects the following income for the Debtors:

    1) Vose Street: Debtors project rental income of $5,480 per month, with expenses of $1,842 per month, providing the Debtors $3,638 in monthly net income. See Exhibit B of the Disclosure Statement (the relevant portion of which is attached hereto as Exhibit 1).

    2) Hart Street: Debtors project rental income of $3,600 per month, with expenses of $1,440 per month, providing the Debtors $2,160 in monthly net income. See Exhibit B of the Disclosure Statement (the relevant portion of which is attached hereto as Exhibit 2).

    3) Salaries & Wages: Debtors project monthly salaries of $3,533, with monthly expenses of $2,133, providing the Debtors with net salary income of $1,400 per month. See Exhibit B of the Disclosure Statement (the relevant portion of which is attached hereto as Exhibit 3).

Thus, the Debtors have a combined projected net income of $7,198 per month.

### b. Proposed Plan Payments

The Plan provides the following plan payments to its creditors:

    1) Administrative Expenses: Estimated at a combined $31,677.50 for the legal services of Debtors' counsels. See Exhibit F of the Disclosure Statement (a copy of which is attached hereto as Exhibit 4). While not entirely clear, the Plan and subsequent filings project the following breakdown and proposed payment of Administrative Expenses: (i) John Bauer: legal fees of $14,927.50 (in addition to the pre-petition retainer of $11,210), with $10,820.75 paid in cash on the Effective Date and the balance $4,106.75 paid over 60 months (See Application for Interim Attorney Fees and Costs, filed on August 12, 2010 at Docket 94), and (ii)

Debra Young: legal fees of $16,750 (in addition to a post-petition retainer paid of $5,000) to be paid in cash on the Effective Date. See Application for Interim Attorney's Fees and Costs filed on June 28, 2010 at Docket 90, as amended on July 27, 2010 at Docket 93.  Thus, the Debtors provide that Administrative Expenses of $31,677.50 shall be "paid in full on effective date", with the remaining $4,106.75 to be paid in "monthly installments over 60 months", for a monthly Administrative Expense plan payment of $68.45. Plan, pg. 4, lines 23-27.

However, a close review of the Plan and Disclosure Statement show that the Debtors will not have $31,677.50 in cash to pay the Administrative Expenses on the Effective Date, and thus will be in default as of the Effective Date.  The Disclosure Statement on page 30 states that the Debtors had $18,588 in cash as of May 27, 2010.  The Disclosure Statement on page 15 states that the Debtors shall have $46,374 in cash on the Effective Date.  However, the Debtors' figures relating to monthly net income less adequate protection payments during the June 1, 2010 through August 31, 2010 period (the "Interim Period") provide that Debtors would only accrue net profit of $9,594 for the Interim Period.  Debtors' monthly net income of $7,198 aggregate to $21,594 for the Interim Period.  Debtor's monthly adequate protection payments of $4,000 to Secured Creditor aggregate to $12,000 for the Interim Period.  Thus, Debtors have a net profit of $9,594 for the Interim Period.  When the Interim Period's net profit of $9,594 is added to the $18,588 in cash the Debtors declared it had as of May 27, 2010, the Debtors will only have $28,182 in cash on the Effective Date, which is $3,495.50 less than the $31,677.50 amount allocated for payment of Administrative Expenses on the Effective Date.  As such, the Debtors will be in default under the Plan on the Effective Date.

Of course, the above assumes that the Debtors do not accrue any additional Administrative Expenses after August 12, 2010.

2) Class 1: The Debtors' Class 1 Treatment of Secured Creditor's claim proposes monthly payments of $1,932.00.

3) Class 2: The Debtors' Class 2 Treatment of the Hart Street property proposes monthly payments of $1,982.00.

4) Class 3: The Debtors' Class 3 Treatment of General Unsecured Claims proposes monthly payments of $3,212.50.

Thus, the Debtors have combined plan payments, irrespective of quarterly fees due to the United States Trustee, in the amount of $7,194.95 per month.

### c. Monthly Net Profit and Feasibility

The Debtors have proposed a Plan that is not feasible under 11 U.S.C. § 1129(a)(11). The Plan (without making any adjustment for its miscalculation regarding available funds for the payment of Administrative Expenses as of the Effective Date) provides for net income of $7,198.00 per month with plan payments in the amount of $7,194.95 per month, resulting in a **net profit** of **$3.05 per month**. There is no margin of error, and thus the Plan certainly does not have a "reasonable probability of success". In re Wiersma, 324 B.R. 92, 112-113 (9th Cir. BAP 2005). In fact, the Plan is just the type of "visionary scheme" that the Ninth Circuit Court of Appeals warned against in In re Acequia, as all of the following assumptions are made by the Debtors:

1) The Properties continue to produce income under the current extraordinary conditions:

> (i) Vose Street – A 4 bedroom, 2 bath, 2,528 sq. foot home (per Debtors' appraisal included as an exhibit to the Disclosure Statement) continues to house nine paying tenants. See Plan, Exhibit A (a copy of which is attached hereto as Exhibit 5)
>
> (ii) Hart Street– A 4 bedroom, 2 bath, 2,283 sq. foot home (per Debtors' appraisal included as an exhibit to the Disclosure Statement) continues to house seven paying tenants AND the Debtors, who moved there to "save themselves $750 per month in rental expense". Disclosure Statement, Page 12, lines 19-21. See Plan, Exhibit A (a copy of which is attached hereto as Exhibit 5)

2) The expenses related to the Properties do not increase

3) There is no decrease in the Salary & Wages of the Debtors

4) Administrative Expenses do not increase

### B. The Plan's Feasibility is Unascertainable Due to its Failure to Properly Provide Plan Treatment in Conformance with Secured Creditor's 1111(b) Election

Finally, regardless of the above, by failing to provide for proper treatment of Secured Creditor's claim pursuant to the 1111(b) Election, it is impossible for the Debtors to demonstrate that the Plan is feasible, as feasibility cannot be ascertained until the proper plan treatment for Secured Creditor is provided.

### 3. THE PLAN IS NOT FAIR OR EQUITABLE PURSUANT TO 11 U.S.C. § 1129(B)

Secured Creditor, an impaired Class, has rejected the Plan. Debtors thus have not satisfied 11 U.S.C. 1129(a)(8), which requires an impaired class to accept a Plan. Debtors therefore must prove, pursuant to 11 U.S.C § 1129(b), that "the Plan 'does not discriminate unfairly' against and is 'fair and equitable towards each impaired class that has not accepted the Plan.'" In re Ambanc La Mesa Limited Partnership, 115 F.2d 650, 653 (9th Cir. 1997) (citations omitted). As noted above, the treatment proposed for Secured Creditor's claim in Class 1 does not comply with the 1111(b) Election, and thus the Plan is not fair and equitable towards Secured Creditor.

### III. CONCLUSION

Based upon the objections outlined herein, Secured Creditor respectfully requests that the Plan be denied confirmation and the case converted to Chapter 7.

Dated: August 13, 2010                    Respectfully submitted,

                                          McCarthy & Holthus, LLP


                                      By: /s/ Gregory J. Babcock
                                          Gregory J. Babcock, Esq.
                                          Attorneys for Secured Creditor