John H. Bauer
Financial Relief Legal Advocates, Inc.
16103 W. Augusta Ave.
Litchfield Park, AZ 85340
(623) 910-6291

Attorney for Debtors

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In Re:<br><br>Danilo Solis Trinidad<br>Lydia Flores Trinidad,<br><br>               Debtors. | CASE NO:  1:09-bk-27152-GM<br><br>CHAPTER 11<br><br>**OPPOSITION TO WELLS FARGO'S OBJECTION TO DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN; DEBTORS' MOTION TO CONFIRM 2ND AMENDED CHAPTER 11 PLAN**<br><br>DATE:  08/31/2010<br>TIME:   10:00 a.m.<br>CTRM:  302<br>FLOOR: 3rd<br>LOCATION:  21041 Burbank Blvd., Woodland Hills, CA |

    The debtors, Danilo & Lydia Trinidad, respectfully submit the following Opposition to Wells Fargo's Objection to their Second Amended Chapter 11 Plan and respectfully submit and request that their 2nd Amended Chapter 11 Plan be confirmed by this Court.

I.    **BACKGROUND**

The debtors' Second Amended Plan and Disclosure Statement was approved by this Court on June 8, 2010 and served on all interested parties thereafter.  The designated deadline for submission of ballots by creditors was August 13, 2010.

The lender, Wachovia, impaired Class #2, voted to "approve" the Plan.  A copy of this ballot is attached as Exhibit "A" to this Motion.  The lender, Wells Fargo Bank, Class #1, which elected for 1111(b) treatment in this bankruptcy, voted against the Plan.  These were the only ballots received by debtors.

11 U.S.C. 1129(a)(10) provides that this Court may confirm the Plan if, where a class of claims is impaired under the plan, "at least one class of claims that is impaired under the plan has accepted the plan,…" (*as has occurred here*)

In addition, it is respectfully submitted that this Chapter 11 Bankruptcy Plan should be confirmed since it has been filed in good faith and is otherwise fully consistent with all applicable provisions of 11 U.S.C. 1129 and the general bankruptcy law.

II.    **WELLS FARGO ELECTED 11 U.S.C. 1111(b) TREATMENT IN THIS
BANKRUPTCY.  DEBTORS' TREATMENT OF THIS ELECTION WAS
FULLY IN ACCORDANCE WITH 9TH CIRCUIT AUTHORITY.  WELLS
FARGO MISAPPLIES 11 U.S.C. 1129 AS A RESULT.**

In its' Objection, Wells Fargo ("Fargo") mischaracterizes in several respects how 11 U.S.C. 1129 applies to the Chapter 11 before this Court.   Its' treatment and discussion of this applicable statute are based on its' status as if it were a secured mortgage holder whose value has been crammed down" pursuant to Section 506—with secured and unsecured component payments

being made to it pursuant to this Plan.  On the basis of that faulty scenario, Wells Fargo argues that this Chapter 11 Plan does not satisfy the requirements of 1129(a) and (b) and should not be confirmed.

In clear contrast, Wells Fargo did completely remove itself from the category of bifurcated mortgage holder when it made its' "Notice of 11 U.S.C. 1111(b) Election" on May 10, 2010. Pursuant to this Notice, it elected treatment under 1111(b) to have its' *entire claim treated as secured* for the purpose of Chapter 11 Plan confirmation." (emphasis added)

The following was clearly stated on page 15, ll. 2-4 of debtors' Second Amended Disclosure Statement which came on for hearing before this Court on June 8:

"This means that they [Wells Fargo] have given up their right to vote on
the plan.  This means that their entire claim is secured, and they have no
unsecured claim in Class #3."

Please note further that we cited *First Federal Bank of California v. Weinstein,* 227 B.R. 284, 296 (B.A.P. 9th Cir. 1998) as the strict legal basis for these principles to determine the amount of Fargo's existing principal claim and to properly handle their claim in this Chapter 11 Plan pursuant to 1111(b):

(1) Existing Secured Claim:  *$847,243.65, less* the "adequate protection" payments of *$29,677.* actually paid through July 31, 2010 to SPS., *"amounting to a secured claim of $817,567."*

(2) Accomplish Payoff of Existing Secured Claim of *$817,567.*:  the appraised value of the property ($400,000.) less adequate protection payments ($29,677) to determine total present value of the collateral ($370,323).  We then employed the interest rate of 4.75% (*In Re Till),* 30 year amortization, to compute the monthly payment amount to Fargo of $1932. per month for 360 months ($695,620.).

Page 3

We then added the scheduled balloon payment of $122,047 (referred to at the bottom of page 15 of the 2nd Amended Disclosure Statement and in the "Treatment" section of page 16) to $695,620 to arrive at the total repayment to Fargo of *$817,567*.

The repayment of the Fargo claim is made exactly pursuant to the principles of *Weinstein.* This case provides that *interest payments are to be credited against the principal amount of the 1111(b) secured claim.* In the case at bar, we add all principal and interest payments made of $695,620. to the remaining balloon payment of $122,047. to fully repay creditor's secured claim pursuant to Fargo's 1111(b) election.

Please note that this 1111(b) treatment was fully, completely, and accurately portrayed and described in the Second Amended Disclosure Statement and Plan and **Fargo did not object to this treatment and did not assert that our calculations were incorrect or improper in any way whatsoever, although it had a full and fair opportunity to do so at that time. Also, Fargo did not object to our affirmative statement that it lost its' right to vote by virtue of its' 1111(b) election.**

Please note further that Fargo never objected to or questioned debtors' underlying appraisal which assigned the fair market value to the subject property in the first instance.

Now, its' sole, fallacious argument against debtors' application of 1111(b) is that we have not presented "evidence or declarations" to support our interpretations of its' 1111(b) election. Fargo does not understand that this is an issue of law for the Court. The debtors do not have to present expert legal witnesses to argue the applicability of *Weinstein* at this confirmation hearing.

Finally, please note that, although Fargo does not approve of how debtors applied the principles of *Weinstein,* it has not provided one scintilla of evidence or argument to prove that our

application of *Weinstein* or any legal principle in the 2nd Amended Disclosure Statement and Plan in this case was incorrect.

Fargo fails to offer any alternative calculations whatsoever to promote their applicable version of 1111(b). Its' entire argument against our application of 1111(b) is that we do not have "evidence" to support it followed up with a bald assertion that debtors' calculations are not correct.

Next, Fargo asserts that debtors have not satisfied certain requirements of 11 U.S.C. 1129, but it does not mention the specific section of this statute which deals with a 1111(b) election as was taken here, 1129(a)(7)(B). That section specifically states:

> "(B) if section 1111(b)(2) of this title applies to the claims of such class, each holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims."

The *Weinstein* case specifically enunciates the principles underlying calculation of the total secured claim and the method by which this total secured claim is to be repaid. Thusly, the calculations underlying Fargo's 1111(b) scheduled repayment were made fully in accordance with 1129(a)(7)(B), but also in accordance with the prevailing 9th Circuit authority which interpreted 1111(b) repayment.

Next, Fargo confusingly cites *In Re Ambanc La Mesa Limited Partnership*, 115 F. 650, 653 (9th Cir. 1997) as applicable to this case. Fargo asserts that, per this authority, if 11 U.S.C. 129(a)(8) is not satisfied, 1129(b) requires that the Plan must not discriminate unfairly against and is "fair and equitable towards each impaired class that has not accepted the Plan." Fargo states

Page 5

that debtors have provided no evidence to prove that it is being treated fairly and equitably in this

bankruptcy.

11 U.S.C. 1129(a)(8) states:

"With respect to such class of claims or interests – (A) such class has accepted the plan; or

(B) such class is not impaired under the plan.

First, *In Re Ambanc* which cites 1129(a)(8) does not involve a section 1111(b) election by

the creditor.  In that case, the creditor had a right to vote for the Plan, *unlike* Fargo which made

its' 1111(b) election in this case. By making the 1111(b) election, Fargo elected to become fully

secured in the collateral for the full amount of its' claim regardless of the court's valuation.  As

such, Fargo could not have "approved" the Plan as *it was not entitled to vote.*  On the basis of the

aforesaid, 1129(a)(8) is not even applicable to this case.  As a result, debtors had no burden of

assuring fair and equitable or non-discriminatory treatment towards Fargo.

Fargo asserts that debtors' have not proven that it is being treated fairly and equitably under

the circumstances of this case.  It is respectfully submitted that Fargo is being treated fairly and

equitably *by definition* because its' treatment under its' 1111(b) election is fully in accordance

with 1129(a)(7)(B) as it has been defined in the 9th Circuit. Debtors need go no further than this.

Notwithstanding the above, Fargo is still being treated fairly and equitably under the facts

of this particular case. Please consider the following facts:

(1) Fargo freely chose to make its Section 1111(b) election on May 10, 2010.  It did this

presumably because it wanted to be able to preserve its' loan balance, present market value

notwithstanding.  Pursuant to this election, the debtors could never sell the subject property for

less than the full loan balance, here $847,000., without lender permission.  Any monies up to the

Page 6

full secured value of its' loan would be paid directly to Fargo, not to the debtors.  Fargo. retained its' *full secured claim* pursuant to its' 1111(b) election.

(2) In sharp contrast, without this election, the debtors could have sold the property for a profit when the value exceeded its' bankruptcy secured value, here $400,000.  Any proceeds over and above the agreed, appraised value in the bankruptcy would have inured to the benefit of the debtors only.  The lender wouldn't get a whiff of this profit.

(3) Fargo freely chose this election in order to maintain the balance of the loan, **not** to maintain the level of its' monthly payments.  The courts have created a tradeoff here:  if a creditor elects 1111(b) treatment, its' claim becomes completely secured.  As such, it receives no payments for any unsecured portion of its' loan because it has none.  In addition, the payments the debtors make on the "secured claim", only have to total the amount of that secured claim.  Further, the debtors can use principal and interest to total this amount, in addition to deducting adequate protection payments previously made, per the principles of *Weinstein.*

(3) All of the 1111(b) requirements for payment of the secured claim to Fargo have been fully met.  Further, as mentioned previously, there was full disclosure of this Plan treatment to Fargo prior to the hearing on the Second Amended Disclosure Statement.  Fargo chose not to object to that Disclosure Statement, chose not to offer an alternative treatment for repayment of their loan, and still, to this day, have not explained how debtors' 1111(b) Plan treatment is incorrect in any way.

(4) The other secured creditor, Wachovia, Class 2, chose *not* to elect 1111(b) treatment.  As such, it receives proper payments under both secured and unsecured components of the Plan.  Once the property exceeds the appraised value of $380,000., the debtors rather than the lender can

sell the property and realize the profit from the sale.

(5) Here you have two lenders who made different choices and whose loans are being paid properly and in accordance with accepted legal principles in the Chapter 11 Bankruptcy Plan now before this Court for confirmation.  Each lender had a different priority.  One lender, Fargo, now wants **both** the equity and the cash flow which 1111(b) does not allow.

Next, Fargo alleges rather briefly that the Plan is not confirmable because certain language within the Plan is unclear regarding dischargeability of debts per U.S.C. 1141(d)(5).  This language referred to by Fargo was clearly set forth within the Second Amended Plan and approved by this Court at the hearing of June 8, 2010.  It does not reveal any reasonable basis for failing to confirm the Plan at this time.

### III.    THIS CHAPTER 11 PLAN IS FEASIBLE AS WRITTEN.

The Chapter 11 Plan is feasible as written.  First, Fargo mistakenly asserts that the Debtors did not file MOR reports for the months of May, June, and July, 2010.  Please find copies of these reports stamped by the U.S. Trustee as Exhibits B, C, and D to this motion.

A.   Attorneys' Fees—Administrative Expenses of Plan—Will Be Properly Paid through the Plan on the Effective Date.

In page 6 of its Objection, Fargo asserts that debtors' will be in default of the Plan on its' effective date due to debtors' inability to pay the scheduled attorneys' fees in this case listed as administrative expenses.  In particular, Fargo states on line 19 that debtors will have only $28,182. (line19) available to pay $31,677.50 (line 8) of debtors' scheduled attorney fees.

First, please note that Fargo's Exhibit 4 shows the debtors' attorneys' fees as though they were to be paid in full at the time of the effective date. This is not an accurate representation of how the fees were to be paid. Please review debtors' attached Exhibit E which is an accurate representation of how attorneys' fees are to be paid in this case. This reveals that Young's fees of 16,970. are to be paid on the effective date and $10,820.75 of Bauer's fees are to be paid on the effective date. The remaining $4,106.75 of Bauer's attorney fees are to be paid over the next 60 months. Thusly, $27,790.75 of the attorneys' fees are to be paid on the effective date, not the $28,182. asserted by Fargo.

Actual Amount Available in Plan on Effective Date is $14,061.25.

Fargo's analysis refers specifically to the amount of $18,588. cash on hand on May 27, 2010, as set forth in debtors' Second Amended Disclosure Statement. It subsequently proceeds to conclude that debtors' "net profit", after payment of adequate protection payments will be $9,594. as of the effective date of the Plan. Thusly, there will be only $18,588. + $9,595 ($28,182.) available in the Plan on the effective date. These are Fargo's numbers.

Please note, next, Exhibit F, page 31 of the Debtors' 2nd Amended Disclosure Statement. This page specifically reveals that there is to be an additional cash contribution to the Plan in the amount of $8,099. of Savings Bonds. Please see Exhibit "G", page 29, which correctly states the value of these bonds as $9,268. Fargo has ignored this significant cash contribution to the Plan. Thusly, there is a base amount available of $9,659.25 on the effective date, before making further additions.

In addition, please note the following that has occurred since the filing of the Second Amended Disclosure Statement. Debtors received federal and state tax refunds of $4402. which

they used to pay part of Debra Young's interim atty fees which became payable when this Court

granted her motion for interim attorney fees. These funds were deposited ito debtors' DIP

account, verification of which is attached as Exhibit H. Thusly, there is an additional amount of

$4402. which is available as of the effective date of the Plan.

Based on the aforesaid, the total amount of cash in the Plan as of the effective date is now

$9659.25 + $4402. for a total amount of $14,061.25—*after the payment of all administrative fees*

*due on the effective date of the Plan.*

Monthly Net Profit and Feasibility

Fargo argues that this Plan is not feasible because there is a very slight net positive cash

flow after payment of scheduled monthly expenses under the Plan .  As a result, the Plan does not

have a "reasonable probability of success".  In particular, confirmation of the plan is likely to be

followed by liquidation.

This is exactly the same reasoning that Fargo used in its' previous Motion for Relief from

Stay on the subject Vose St. property.  It argued that debtors' were not capable of making

"adequate protection" payments because, after making those payments, they would have so little

money left over…They could not hope to continue to make these payments based upon so little

cash flow and such a minimal return on their investment.  This reasoning is Fargo's Motion for

Relief from Stay revisited.

In particular, Fargo concludes that debtors will obtain a net profit of $3.05 based upon its'

submitted Plan.  Assuming that Fargo's numbers initial number is correct, Fargo is not

considering another fact that bears directly on this issue.  Debtors stated in their Motion for Cash

Collateral and Order for Adequate Protection with respect to this very same creditor, Wells Fargo

Bank, that it was eliminating the Direct TV cable service of $50.00 per month and the gardener services of $65. per month (doing it themselves) for an additional total savings of $115. per month.  Those scheduled items were still budgeted for in Fargo's Exhibit 1.

In any case, this Court ruled, with respect to Fargo's Motion for Relief from Stay, at that time that the debtors' return on investment should not be determinative whether the debtors should be given an opportunity to make proper and timely adequate protection payments.

Following this Courts order of adequate protection payments, debtors did promptly and have continued to promptly make *all* agreed adequate protection payments to Fargo— including all back due payments following the filing of the Petition, per the Court order.

This is not a case where Fargo is arguing that the case should be converted to a Chapter 7 because debtors have demonstrated a clear inability to make their agreed, ordered payments to this creditor.  *In clear contrast, all payments have been timely and properly made to Fargo.*

*The fact here is not that SPS is concerned that the Plan is really viable.  Fargo is afraid that the Plan is viable.  The actual viability of this Plan does not square, however, with their desire to take the property back through a Chapter 7 relief from stay.  They want their cash through foreclosure or "short sale".  That's why they don't want this Plan confirmed. Fargo is seeking any sort of technical basis it can, no matter how minor, to defeat the confirmation process in this case.*

Exhibits 1,2, 3, 4, and 5 attached to Fargo's Objection are not new, insightful documents which lend any credibility to its' objection.  These are documents previously prepared by debtors and were filed with this Court for review on 5/28/10 as part of a Disclosure Statement—none of which were previously objected to by Fargo.

Page 11

Please note further, with respect to this issue of feasibility of this Plan, that debtors have also continuously, properly, and timely continued to make all agreed "adequate protection" payments to Wachovia, the other secured lender in this action.

Wachovia has acknowledged these timely payments by the debtors with a "yes" vote in this proceeding.  It clearly doesn't feel that a small net monthly return in favor of the debtors means that the Plan is not feasible.  Wachovia clearly had all the same documents to review in making its' decision on the feasibility of this Plan that Fargo had.  It came to a clearly different decision—here, a "yes" in favor of the Plan.

Also, in contrast to Fargo's argument, please note that the debtors' personal financial situation *can improve*.  There may be an increase and improvement in their personal financial situation.  This will serve to either increase debtors' net return or provide additional monies to pay creditors in the Plan format.

## IV.    <u>CONCLUSION</u>

This Second Amended Chapter 11 Plan has been formulated in good faith and fully in accordance with 11 U.S.C. 1129.  Subsection (a)(7)(B) specifically provides how a secured creditor must be treated if it elects 1111(b) treatment as Fargo did here.  Fargo's secured interest was treated according to the letter of the law in the 9th Circuit.

This 1111(b) election by Fargo meant that it lost its' right to vote in the proceeding.  As such, it could not have "approved" the bankruptcy per 11 U.S.C. 1129(a)(8).  Its' claim was not therefore subject to the requirement that its' claim be treated "fair and equitably" with respect to other impaired classes.

Yet, the actual facts reveal that Fargo was treated quite fairly. It is being given every penny to which it became entitled when it made its' 1111(b) election.  Rather than choose monthly cash flow, it chose a secured claim for its entire original loan balance.  Based upon 9th Circuit authority, the 1111(b) election meant that the creditor, although receiving credit for its' entire secured claim, could receive less overall cash flow.

In contrast, Wachovia, which did not make this election, became entitled to a greater cash flow but not a protection of its' total original loan balance which Fargo did obtain.

Finally, a closer review of the financial numbers than Fargo will reveal that this Plan is a proper, feasible Plan for immediate confirmation.  All adequate protection payments have been duly and timely made by debtors leading up to the date of this confirmation.  The Plan has the appropriate funds on its' effective date to pay all administrative expenses and has a surplus of $14,061.25.  It is respectfully submitted and requested therefore that, pursuant to 11 U.S.C. 1129, this Plan be immediately confirmed.

DATED:  August 17, 2010                    RESPECTFULLY SUBMITTED:

/s/ John H. Bauer
Financial Relief Legal Advocates,
16103 W. Augusta Ave.
Litchfield Park, AZ 85340
(623) 910-6291

Page 13